## GIBSON *v.* WALKER.

Devise in 1810 to trustees in fee for the use of the testator's married daughter, her heirs and assigns forever, exempt from the control or debts of her husband. If he should die before his wife, then in trust to convey the legal estate to the latter in fee; and in case the daughter should die before the testator, then in trust for the use of such children as she might leave at her decease, their heirs and assigns forever; and if the said daughter should die childless then in trust for another son and daughter; and in case of their deaths then for the right heirs of the testator forever: *Held,* that the contingency of the daughter's dying childless and the subsequent limitations refer to her death in the lifetime of the testator.

The remainder in fee devised to the daughter, after the death of her mother, became indefeasible upon her surviving her father.

APPEAL from the Supreme Court. Controversy relative to the title to a tract of land in the town of Easton in the county of Washington, which was formerly the property of Abraham Ten Broeck, late of Albany, deceased, and was devised by him upon the death of his wife, in the fourth clause of his will,

Gibson *v.* Walker.

primarily to trustees for the use of his daughter Elizabeth Schuyler, during the lifetime of her husband Rensselaer Schuyler, and upon his death in trust to convey the legal estate therein to her in fee. There were certain other ulterior or alternative directions in the same clause relative to the same property, which will appear from the copy hereafter inserted. The plaintiff claimed title to the property, and sought to recover it from the defendant, who held it under a claim of title derived from Elizabeth Schuyler and her husband, both of whom were dead. The case was submitted by the parties upon a statement of facts pursuant to the 372d section of the Code. The will was dated on the 27th of March, 1809, and the testator died in January, 1810. By the second clause, he devised all his real and personal estate to his wife for and during her natural life. By the third clause he devised, from and after the decease of his wife, to his son, Dirck Ten Broeck, in fee, certain parts or portions of his lands, and also bequeathed to him a part of his personal property. The fourth clause of the will, upon which the present controversy turned, was in the following words:

"From and immediately after the decease of my wife, I give, devise and bequeath unto my nephew, Philip S. Van Rensselaer, and my son, Dirck Ten Broeck, or the survivor of them, and the heirs, executors, administrators and assigns of such survivor, all my land at a place called Hoosick, but now the town of Petersburgh, on the east side of Hudson river, in the Manor of Rensselaerwick, and county of Rensselaer, together with the hereditaments and appurtenances thereunto belonging or in any wise appertaining, and also the full and equal one-third part of all my real and personal estate not herein otherwise disposed of, in trust, nevertheless, for the use of my beloved daughter Elizabeth, her heirs and assigns forever; so however, that the said estate or any part thereof, or the income or profits thereof, shall not in any wise be subject or liable to any claims, debts or engagements, or to the control, management or disposition of her husband Rensselaer Schuyler; and if he should die before my said daughter, then in trust to convey and assign the legal estate in the premises to her, her heirs,

executors, administrators and assigns forever; and in case my said daughter should die before me, then in trust for the use of such child or children as she may leave at her decease, their heirs, executors, administrators and assigns forever; and if my said daughter should die childless, then in trust for my said son Dirck Ten Broeck, and my daughter Margaret, their heirs, executors, administrators and assigns forever; and in case of the death of my son Dirck and my daughter Margaret, then in trust for my own right heirs forever."

In the fifth clause, the testator devised, from and after the decease of his wife, to his daughter Margaret, her heirs, executors, administrators and assigns forever, one-third part of his land not otherwise disposed of, and also certain other lands specifically mentioned, and also bequeathed certain personal property to her absolutely, upon her marriage, or the death of her mother; and in the sixth clause he devised a tract of land, upon the death of his wife, to his grandson of the same name, in fee. There is no ulterior destination of the property devised by the testator in any part of his will, except what is contained in the fourth clause. The land in controversy is included in the one-third part of the estate not "otherwise disposed of," mentioned in that clause. The testator's said son and two daughters were his only children and heirs at law. His widow died in July, 1813. On the 11th of February, 1812, a deed between Philip S. Van Rensselaer, one of the trustees, Dirck Ten Broeck, the testator's son, the other trustee, Rensselaer Schuyler and Elizabeth his wife, and the testator's other daughter Margaret, was duly executed by them, whereby Van Rensselaer, with the consent and at the request of the other parties, conveyed all the trust estate and the trust devolved upon him to his co-trustees. On the next day a deed between the said Dirck Ten Broeck, Rensselaer Schuyler and Elizabeth his wife, and Margaret Ten Broeck, was duly executed by them, which recited the death of the testator's grandson Abraham, intestate and without issue, and in which, among other things, the said Dirck Ten Broeck and Margaret Ten Broeck, in pursuance of a family arrangement, granted, remised, released, confirmed and

Gibson *v.* Walker.

assigned unto the said Elizabeth Schuyler, her heirs, executors, administrators and assigns, all the testator's real and personal estate devised and bequeathed in and by his said will in trust as aforesaid, together with the hereditaments and appurtenances, and all the estate, use, trusts and claims, both at law and in equity, of the said Dirck Ten Broeck and Margaret Ten Broeck, and each of them. In the year 1817, the said Rensselaer Schuyler and Elizabeth his wife, by a warrantee deed conveyed the premises in dispute to a third party in fee, who subsequently conveyed the same in fee to the defendant. Margaret Ten Broeck was never married, and died in 1813, before her mother. Rensselaer Schuyler died in 1847. Elizabeth Schuyler died childless, in 1848. Dirck Ten Broeck died in 1833, leaving but three children, his only heirs, and now the only heirs of the testator, of whom the plaintiff, who is a widow, is one. She claimed to recover the undivided ninth part of the premises as one of the heirs and devisees of the said testator. The Supreme Court at a general term in the fourth district, rendered a judgment in favor of the defendant, from which the plaintiff appealed to this court.

*John K. Porter*, for the appellant.

*Job Pierson*, for the respondent.

S. B. STRONG, J. It is a cardinal rule in the construction of wills to conform to the general intention of the testator so far as that is manifested by the documentary language. In complying with that rule it sometimes becomes necessary to disregard a direction inconsistent with and not simply qualifying the main design. Where both cannot prevail, the less must yield to the greater and more important consideration. In this case it is clear that the testator intended to confer upon his daughter, Mrs. Schuyler, the fee (whether simple or defeasible will be hereafter considered) in all the lands devised to her upon the death of her mother. Whether the estate was vested or contingent until that event happened, it is unnecessary

to determine or consider. The conveyance under which the defendant claims the premises in dispute, was executed subsequent to the decease of the testator's widow. The devise to trustees during the lifetime of Mrs. Schuyler's husband, was not intended to diminish the quantity of her estate, nor her power over it, but simply to protect it from the responsibilities or engagements of the husband. The trustees were to hold the property for the use of Mrs. Schuyler, her heirs and assigns forever, but not in any wise subject or liable to any claims debts or engagements, or to the control, management or disposition of her husband. As the exemption was clearly the sole object of the trust, when the necessity for that should terminate by the death of the husband, the trust estate would have ceased and the legal estate would have vested without any direction for a conveyance by the trustees. The estate devised to Mrs. Schuyler was vendible by her according to the general rules of property, whether legal or equitable, unless some valid restriction was imposed by the will. There was no such restriction unless the direction for the conveyance of the legal estate to Mrs. Schuyler, upon the death of her husband, should be construed to negative any power of disposition by her in the meantime. It was not so declared nor was it so intended. It was intended (doubtless from a supposition that it was necessary) to enlarge or confirm a preëxisting estate, not to restrict it.

It is generally considered that when the legal estate in lands is devised to trustees for the use of a *feme covert*, not subject to the control or liabilities of her husband, she is competent to act in all respects in reference to such property as if she was a *feme sole*. It is said by Mr. Clancy, in his treatise on the rights of married women (*p.* 288), that "it is not denied that a married woman can charge and alienate personal property and the rents and profits of lands for her life, which have been given to her separate use, to the full extent of her interest in it," (them) "provided she has not been restricted by the terms of the instrument under which she derives it." There are cases in England where it has been decided that where property has been given to the separate use of a married woman during the joint

lives of herself and her husband, and upon his death, should she survive him, to her in fee, she cannot dispose of the fee during her coverture. The reason undoubtedly is, that she has only a contingent remainder during the lifetime of the husband. That rule is of course inapplicable where the primary devise to the use of the wife is of the fee. In such case there can be no reason why she should not, during coverture, have the same power of disposition of the estate in fee as of the rents and profits during her life. Accordingly Mr. Clancy says (*p.* 321): "It therefore may be now considered as the settled law of our courts of equity that wherever property has been given to the separate use of a married woman, the gift being unaccompanied by any power of appointment, she is so far to be treated as a *feme sole* in respect to it that she may (as in cases whêre she has a power of appointment) dispose of it by will, or by grant of an annuity out of it, and that she may sell her reversionary interest in it." The general power of a married woman to dispose of property, the legal title to which is held by trustees to her use, with the like effect as if she was a *feme sole*, was recognized in the Court for the Correction of Errors, in this State, in the case of *Jaques* v. *The Methodist Episcopal Church* (17 *John.*, 548). In that case Judge PLATT said: "I therefore incline to the rule of equity as administered by Lord MACCLESFIELD, Lord TALBOT, Lord HARDWICK, Lord THUR-LOW and Sir WM. GRANT, and as it was very ably though un-successfully vindicated by the learned and venerable Chancellor DESSAUSSURE in the case of *Ewing* v. *Smith* (3 *Eq. R.*, *S. C.*, 447), which rule I understand to be substantially this: that a *feme covert* having a separate estate is to be regarded as a *feme sole* as to her right of contracting for and disposing of it. The *jus disponendi* is incident to her separate property, and follows of course by implication; she may give it to whom she pleases or charge it with the debts of her husband, provided no un-due influence be exerted over her; and her disposition of it will be sanctioned and enforced by a court of equity without the assent of her trustee, unless that assent be expressly made necessary by the instrument creating the trust. And the speci-

fication of any particular mode of exercising her disposing power, does not deprive her of any other mode of using that right not expressly or by necessary construction negatived in the devise or deed of settlement." And the learned judge cites many cases (*pp.* 583, 584), in support of the doctrine so emphatically laid down by him. In the same case, Chief Justice SPENCER said that "from the year 1740 until 1793 (with the single exception of the opinion of Lord BATHURST in *Hulme* v. *Tenant*, which occurred in 1778, and in which case a rehearing was granted by Lord THURLOW, and the opinion reversed) there is an unbroken current of decisions that a *feme covert* with respect to her separate estate is to be regarded in a court of equity as a *feme sole*, and may dispose of her property without the consent or concurrence of her trustees, unless she is specially restrained by the instrument under which she acquires her separate estate." Those learned judges laid down the rule as a general one, and without applying it distinctly to real or personal estate. Most assuredly, if a married woman having separate property under a settlement by deed, or a devise in a will, can be deemed to have the powers of a *feme sole* in reference to one species of estate, she may as to the other. The cases make no distinction, nor is there any reason why there should be any. It may be a reason in favor of the rule that it is conformable in spirit to the recent legislation in this State. . In this case, the consent of the trustees was not required by the will, and was not therefore necessary. If it had been it would have been inferred from the release of one of them to the other, and the absolute conveyance by the latter of the entire property to Mrs. Schuyler. It is unnecessary to decide whether the deed from her and her husband, under which the defendant claims title to the premises, conveyed the entire title, or only an equitable interest to be consummated by further action. In either case the defendant's possession would be protected unless the fee devised to or for the use of Mrs. Schuyler was made defeasible by the will upon some event which has actually occurred, and in favor of the plaintiff and the other heirs of the testator.

The question whether the fee devised to Mrs. Schuyler was defeasible arises upon the following clause in the will: "And in case my said daughter should die before me, then in trust for the use of such child or children as she may leave at her decease, their heirs, executors, administrators and assigns forever; and if my said daughter should die childless, then in trust for my said son Dirck Ten Broeck and my daughter Margaret, their heirs, executors, administrators and assigns forever; and in case of the death of my said son Dirck and my daughter Margaret, then in trust for my own right heirs forever." This clause is so framed that all the devises which it contains may be deemed to depend upon one common event — the death of Mrs. Schuyler in the lifetime of the testator. The devise, in this part of the will to her child or children, is clearly made dependent upon such contingency. There is no other devise to such child or children in the will. The word "heirs" used in the devise to Mrs. Schuyler, might include her children, not, however, as purchasers, but by way of limitation. When, therefore, the testator in the next subdivision of the same sentence (for the two parts are divided by a semi-colon), connected by the copulative conjunction "and," devises the same property to his son and younger daughter if Mrs. Schuyler should die childless; he means in the event of her having no child to take under the first subdivision. He could not have intended to go any further. He contemplated only such time as the property would be held in trust. That could not be after the death of Mr. Schuyler, as the trustees were directed, upon that event, to convey the legal estate to his wife, her heirs, executors, administrators and assigns, and thereby denude themselves of the trust, whether she should then have children or not. The testator, if he was consistent in his intentions, could not have had reference to her dying childless after that. Neither have we a right to refer to the time intermediate the death of the testator and that of Mr. Schuyler, as that period is not designated in the will for any purpose except to define the duration of the trust, with which the eventuality of the death of Mrs. Schuyler without progeny is in no manner connected. The next and only

remaining devise of the same property to the testator's own right heirs "in case of the death of his son Dirck and his daughter Margaret," is in trust for such heirs, and clearly indicates that it must take effect, if at all, while such property should be held in trust under the previous disposition. There is no other devise in trust than that. It is supposed by the counsel that this is predicated upon the contingency that the testator might survive his wife, as otherwise the trust estate could not commence immediately after his decease. But clearly the devises of the remainders in fee upon the death of the wife, constituted vested interests upon the testator's decease, although the right of possession and enjoyment was postponed. The words "from and after the decease" of the wife were descriptive of the remainders, and not of the time when the estates would vest. This is a familiar rule and needs no illustration from authorities. The trustees took the remainder immediately after the decease of the testator, for Mrs. Schuyler in fee, if she should then be living, if not then for her children, if she should have any; or if she should have died childless, for the testator's other children, or if they should have previously died, for his own right heirs. In this view, and as it seems to me in this view only, these alternative dispositions are consistent each with the other. If Mrs. Schuyler should survive her husband, and the trustees should then convey the legal estate in fee simple to her as they were required to do, they would not subsequently hold the property in trust for any purpose whatever, whether she should die with or without progeny, except under a new devise to them, which there was not. So, too, if Mrs. Schuyler had died childless during the lifetime of her brother and sister, and the trustees had then conveyed the property to them, "their heirs, executors, administrators and assigns," as they would have been bound to do, if at all, they would have held no continuing estate in trust to be conveyed by them to the right heirs of the testator upon the death of such brother and sister. If the language used by the testator is susceptible of two interpretations, the well-settled and reasonable rule in such cases calls for an application which will

Gibson *v.* Walker.

preserve consistency rather than one which will create repugnance. The general intent of the testator was to give to his children the remainder in fee, upon the death of his wife, in the property devised to them respectively. The only manifest difference seems to have been caused by what seemed to him the greater chance that Mrs. Schuyler might die in his lifetime. He therefore made a provision that the legacy and devise to her should not lapse in that event, and that led to alternative directions in case she should die before him and childless. There is no positive evidence that he intended to make any further distinction in the eventual destination of the property devised to her. There is nothing indicating that the testator preferred either of his children to the others, nor did he in terms devise over the property primarily given to Mrs. Schuyler or for her use if she should die childless as well after his decease as before that event, and in both of those important particulars, as well as in others, this case differs from *Chrystie* v. *Phyfe*, (19 *N. Y.*, 344), recently decided by this court.

As to the devise to Dirck Ten Broeck and Margaret Ten Broeck and their heirs, any interest under that was effectually released to Mrs. Schuyler by the deed of the 12th of February, 1812.

As the plaintiff proved no title in herself, she could not have recovered the premises in dispute from the defendant, even if he had failed in proving that he had a legal or equitable title.

The judgment should be affirmed.

SELDEN and GRAY, Js., expressed no opinion; all the other judges concurring,

Judgment affirmed.