(No. 33258.—

MARVIS CHARLET *et al.*, Appellees, *vs.* LAWRENCE CHARLET *et al.*, Appellants.

*Opinion filed January 21, 1955—Rehearing petition stricken March 22, 1955.*

SOLLO, GRAHAM & CALIFF, of Moline, and ERMAN A. KING and TELLEEN & TELLEEN, both of Cambridge, (LOREN E. MURPHY, of Monmouth, of counsel,) for appellants.

EAGLE & EAGLE, (EDWARD L. EAGLE, JR., of counsel,) both of Rock Island, and CARL A. MELIN, of Cambridge, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This appeal is from a decree of the circuit court of Henry County ordering partition of three farms among the heirs-at-law of Ferdinand Charlet, who died in 1922, survived by his widow and six sons, Frank, Frederick, John, Carl, Ernest and Bernard.

For some time before he executed his will in 1914, the testator had owned six farms. Two of the farms were

103 acres, two 160 acres, and the other two 240 acres. His six sons all lived with him and assisted in the farming operations, receiving no compensation. Around 1900 the testator's son Frank withdrew from the family farming operations. His father paid him his "wages" when he left home. Frank rented a farm of his own for a few years, and then in 1904 moved to South Dakota, where he purchased a farm of 320 acres for $12,800, of which $4000 was financed by a loan from the testator for which Frank executed a note. As each of the other sons married he moved onto one of the farms, established his own home, and received the money from the crops which he raised. In 1911 Carl, who did not wish to build a house on land which he did not own, bought the 103-acre farm on which he was living from the testator. The deed recited a consideration of $15,450, but Bernard, who was present at the transaction, testified that Carl in fact paid only $7000, the amount for which the land was originally bought by the testator. In 1914 each of the other sons was occupying one of the remaining farms. Each of them, except Ernest, had erected buildings at his own expense on the farm he occupied. Frederick lived on the other 103-acre farm, John and Ernest each lived on one of the 240-acre farms, and Bernard on one of the 160-acre farms. The other 160-acre farm was not occupied by any of the sons. The value of the farms, while not equal, did not differ greatly.

By the second paragraph of his will the testator bequeathed to his widow all of his household goods and all of his cash, except a sum of $7000 bequeathed to his son Carl, in which the widow was given a life interest. The widow was also devised a life estate in the unoccupied farm of 160 acres and in the testator's residence in Wethersfield. In the third paragraph the testator bequeathed to Frank the $4000 note which Frank had executed. By the fourth, fifth, sixth and eighth paragraphs the testator devised to Bernard, Ernest, Frederick, and John, respectively, a life

estate in the farm which each was occupying, subject to
an annual payment to their mother. The seventh paragraph
bequeathed to Carl the remainder interest in the $7000 in
which the widow was given the life interest. The will
made no disposition of the remainder in the real estate
devised to the widow, and upon her death in 1930 this
property was partitioned and sold and the proceeds dis-
tributed according to the laws of intestacy. In 1951 five
of the sons had died. Ernest died without issue, and the
farm which he had held was also partitioned and sold and
the proceeds distributed as intestate property. The other
sons, except Bernard, died leaving issue surviving them.
Bernard is still living and has one child.

The proceedings below commenced with a complaint
brought by the widow of Walter Charlet, a son of John
Charlet, and by Walter's four daughters. Walter had pre-
deceased his father. The complaint asked that John's farm
be partitioned among the plaintiffs and the two surviving
sons of John. Cross complaints were then filed by the
widows and children of Frank, Carl, and Ernest, seeking
partition not only of John's farm, but also of Bernard's and
Frederick's, among all of the heirs-at-law of the testator.
The principal issue made by the pleadings was the proper
construction of Ferdinand Charlet's will. This appeal is
from a decree granting the relief prayed in the cross
complaints.

The case turns on the construction of the first clause
of the ninth paragraph of Ferdinand's will. That paragraph
reads:

"In case any of my said sons shall die leaving issue, born to
them, that survive them, it is my will that such issue shall take the
lands herein devised to them respectively for life, subject however
to whatever burdens there may be thereon under the terms of this
will; and in case of the death of any of my said sons before my
death, leaving no issue born to them, which shall survive them, it is
my will that the widow of such deceased son shall have the use and
enjoyment of one-third (1/3) of the land herein devised to such

son, as long as she remains his widow. The terms of this clause shall apply only to natural born children and shall in no case apply to adopted children of any of my said sons."

It should be noted initially that the interest devised to the issue of testator's sons by the first clause is in fee and is not a life estate. The word "them" refers to the testator's sons, and the entire phrase "herein devised to them respectively for life" describes the lands which are being devised, that is, the four farms in which life estates had been created by the will. As appellants point out, this qualification was necessary because the opening reference to "any of my said sons" would otherwise include the two sons to whom no interest in a farm had been devised. It follows that the phrase "for life" does not refer to the interest devised to the issue of the testator's sons.

The appellees do not seriously question this point, but they differ with the appellants as to the circumstances under which any interest at all passes under this clause. The appellants take the clause at its face value as the devise of a contingent remainder in each farm to the surviving issue of the son who was the life tenant of that farm, regardless of whether the life tenant died before or after the testator. The appellees contend that there must be read into this first clause the phrase "before my death," so that the surviving issue of a life tenant would take an interest in a farm only if the life tenant predeceased the testator. Since Frederick, John, and Bernard all survived their father, their issue would take nothing under this construction, and since the will makes no further disposition of the property upon the death of the life tenants, the fee would descend by intestacy to the heirs-at-law of the testator.

The appellees' argument in favor of their construction of the first clause is based on the occurrence of the phrase "before my death" in the second clause of the paragraph. They maintain that the clauses must be read as alternatives, both referring to the single possibility of the death of a

son prior to the testator, the first clause dealing with death with issue, and the second with death without issue. This reading, they maintain, is required both by a general rule of construction laid down in our decisions, and by the necessity of rendering the terms of this particular will consistent and meaningful. In support of their position the appellees cite our decisions in *Williamson* v. *Carnes,* 284 Ill. 521; *Brittain* v. *Farrington,* 318 Ill. 474; and *Duryea* v. *Duryea,* 85 Ill. 41. See also *Caslavka* v. *Caslavka,* 194 Iowa, 52, 188 N.W. 4; *Walton* v. *Wormington,* 89 Colo. 355, 2 Pac. 2d 1088; *Gibson* v. *Walker,* 20 N.Y. 476.

The *Williamson case* is illustrative. There the will by which certain property was left to the testator's children provided, "and if any of said sons or daughters shall die before the said Richard Carnes [the testator], and leave a child or children, such deceased child or children's share shall go to the child or children of such deceased child or children, and any son or daughter shall die without child or children, then in such case such deceased child's share so dying without child or children shall be divided equally between the living children and the child or children of any dead child." It was held that these two clauses were inserted to prevent a lapse in the case of the death of any of the testator's children before his death, and that the latter part of the devise should therefore be construed as if the phrase "before the said Richard Carnes" had appeared after the words "and any son or daughter shall die."

In the *Williamson case,* and in the other decisions of this court cited by the appellees, the explicit reference to the death of the testator occurred in connection with the disposition of property to be made if a child should die leaving issue, and the question was whether the alternative devise contingent upon the child's death without issue should be construed as subject to the same qualification. In each of these cases, moreover, there was a devise of the fee to the first taker followed by a gift of the same estate.

In the present case, however, the initial gift is of a life estate, followed by gifts of the remainders in fee. The rationale of the *Williamson case* is that the testator, by explicitly stating that the issue, if any, of his child shall take an interest only if the child predeceased him, indicated that the devise was substitutionary. This being so, the alternative devise conditioned upon the child's death without issue was given the same interpretation, by way of exception to the general rule that death without issue means death at any time. Since in the present case the quantum of estate devised to the testator's children is not the same as that devised to their issue, it is not plausible to regard the devise to the latter as substitutionary gifts intended to avoid lapse.

Nor do we find anything in the other parts of this will which requires the construction proposed by the appellees. It is true, as they point out, that except for the clause now in question, the testator confined himself to disposing of life interests in his real estate, omitting to take care of the remainder in the property devised to his wife, and in the four farms in which his sons had life estates in the event that they should die without issue. But if it is anomalous for a testator to dispose of the fee with respect to only a part of his property, and then only upon one contingency, the anomaly is not removed by appellees' construction, for it would still be true that if any of the sons of the testator had predeceased him, and had left issue surviving them, the issue would have received a fee.

We do not agree with the suggestion that the will as interpreted by the appellants fails to reveal an intelligible plan of disposition. The testator apparently attempted a rough equalization among his six sons. To Frank, who had moved away, and to whom he had advanced money to enable him to purchase his own farm, the testator bequeathed the amount of the note which represented that advance. To Carl he had sold a farm, and by his will he

bequeathed to Carl the amount of the purchase price. To his other sons, who had lived on the farms and improved them, he devised life estates only. In the light of these circumstances it does not seem unreasonable that the testator should supplement the devise of a life estate in each of these farms with a grant of the remainder in each case to the issue of that son who had occupied and improved the farm, rather than permit the fee to be shared in by the heirs of those of his sons who were bequeathed what the testator apparently considered the money equivalent of such a fee. Certainly there is nothing to indicate any contrary testamentary intent which would justify us in overriding the apparent and ordinary meaning of the language which the testator used.

The decree of the circuit court of Henry County is reversed and the cause remanded, with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*