## TYLER, executrix, v. THEILIG et al.

1. A testator devised described real estate to his wife, "free from all charge or limitation, to her own proper use, benefit, and behoof," but added in immediate connection therewith the following provision: "In the event that I and my said wife should die without children, then I give, bequeath, and devise the said above-described real estate to my wife's sister [F.], to have and to hold the same in fee simple, to her and her heirs forever; nevertheless this bequest and devise shall in no wise interfere or limit my wife's interest in said real estate. Should said [F.] die before my said wife leaving no child or children, then this devise shall revert and become a part and parcel of my general estate, subject to any disposition that my wife may make of the same." Held: (1) The widow took a fee-simple estate, determinable upon her death without issue, in which event F., if living, or her issue if she had previously died leaving children, would take a fee-simple estate. (2) In the event of the death of F. without issue prior to the death of the testator's widow, the property would revert to the testator's general estate, subject to the control of the widow and to her disposition by deed or will.

2. A devise of the residue of the estate to the testator's widow for life or during widowhood, with remainder after her death or remarriage to "the lawful heirs of Charles F. Tyler in the United States of America, or the lawful heirs of Carl F. Theilig, formerly of Noulitz, Saxon Altenburg," according to the Georgia statute of distributions, conveyed to the widow an estate for life or widowhood, with remainder to the heirs of the testator other than the widow.

(a) It appearing that the testator, a native of the German Empire, was known in Germany as Carl F. Theilig and in the United States as Charles F. Tyler, and that the will was signed with both names, the alternative expression was merely a means of identification, and did not render the devise in remainder void.

(b) A subsequent clause in the will which provided for children which might be born after its execution was not in conflict with the devise last mentioned, but was merely an alternative or conditional provision.

Argued June 27,—Decided November 13, 1905.

Petition for direction. Before Judge Lumpkin. Fulton superior court. January 28, 1905.

Carl F. Theilig, a German subject, moved to this country, became naturalized, and changed his name to Charles F. Tyler. In 1903 he died, a citizen of Georgia, leaving a will in which he sought to dispose of an estate valued at something more than $50,000. His wife, Maggie Tyler, was made executrix of the will. The present suit is upon her petition, which alleges that the will is ambiguous, and prays that the court construe it. The first item of the will is as follows: "I give, bequeath, and devise to my

wife, Maggie Tyler, the following property, to wit: All that tract or parcel of land in the City of Atlanta, known as No. 157 Walton street, situated on the north side of said street and fronting on the same fifty (50) feet, more or less, and extending back from said street one hundred and sixty (160) feet, more or less, free from all charge or limitation, to her own proper use, benefit and behoof. In the event that I and my said wife should die without children, then I give, bequeath, and devise the said above-described real estate to my wife's sister, Froney Flowers, to have and to hold the same in fee simple, to her and her heirs forever—nevertheless this bequest and devise shall in no wise interfere or limit my wife's interest in said real estate. Should said Froney Flowers die before my said wife, leaving no child or children, then this devise shall revert and become a part and parcel of my general estate, subject to any disposition that my wife may make of the same." The petition alleges that Froney Flowers was in life at the date of the death of the testator; that the testator died without leaving any child or children, or the descendants of a child or children, being survived only by his wife, the petitioner, who, as before stated was named as his executrix; and that petitioner is unable to determine what estate, if any, passes to Froney Flowers under the last clause of the item quoted—"whether the attempted bequest to said Froney Flowers is wholly void because repugnant to the devise to Maggie Tyler made in the first clause of said first item, or whether the same, if in any event valid, lapsed by reason of the fact that Maggie Tyler did not die prior to the will's taking effect."

The second item of the will was as follows: "I give, bequeath, and devise to my wife, Maggie Tyler, all the rest, residue, and remainder of my real and personal estate, of every name, description and nature whatever, to be used and enjoyed by her during her natural life, or so long as my said wife shall be and remain a widow; and from and immediately after her decease, or in the event of her marrying again, from and immediately after her remarriage, then the rest, residue, and remainder of my real estate shall be distributed to and descend according to the laws of inheritance in force in the State of Georgia, to my lawful heirs in the United States of America, or the lawful heirs of Carl F. Theilig, formerly of Noulitz, Saxon Altenburg." It was alleged that at the time of his death the testator was survived by his widow, the petitioner, a.

resident of Fulton county, Georgia, a niece residing in Passadena, Los Angeles county, California, and brothers and sisters and children of a deceased brother and a deceased sister, living in the German Empire; and that petitioner is unable to determine the legal effect of the second item of the will, four questions arising in its 'construction, to wit, (1) Does Maggie Tyler take an absolute title in the personal property of the estate under this item, or only an estate therein for life or widowhood? (2) Is the remainder estate attempted to be created under this item for the heirs of the testator void for uncertainty? (3) If not void for uncertainty, is the devise of the remainder of the estate, created under item 2, limited to the heirs residing in the United States of America, or to the German heirs alone, or does it include both? (4) If not void for uncertainty, would Maggie Tyler, the widow of the testator, in the event of her remarriage, take as sole heir under the Georgia statute of distributions? The third item of the will undertakes to create in the testator's wife a trust for the benefit of any child or children begotten by him which might be born of her before or subsequent to his death; but the petition as amended shows that no such child was born, and that the possibility of issue has become extinct. It was prayed that the court construe the will and enter a decree by which the various doubts suggested should be resolved, and that certain named parties at interest, residing in this country and in the German Empire, be served and made parties to the suit. As no question of fact was involved, the case was submitted on its purely legal aspects to the judge for determination, and a decree was entered in accordance with an opinion which his honor filed and had sent up with the record. To this decree the executrix excepted.

*Kontz & Austin,* for plaintiff.  *David Eichberg,* for defendants.

Fish, C. J. (After making the foregoing statement.) Since this case was tried, the learned jurist who rendered the judgment has, as was said of his lamented kinsman by Chief Justice Bleckley on a similar occasion, been translated to a seat on this bench, and the possibility of error on his part, like that of issue on the part of the plaintiff below, has become extinct. Not that there has been error committed by him in the judgment now under review; for the clear and lucid opinion in which he sets forth his reasons for

that judgment so thoroughly accords with our own view of the case that we have decided to adopt the opinion, with some necessary modifications, as our own.

1. It is contended that the first item of the will gave a fee-simple absolute estate to Mrs. Tyler, and that Froney Flowers took no estate thereunder. If this construction is correct, and there was no condition or limitation intended to be put upon the estate devised to Mrs. Tyler, then the second paragraph of this item is absolutely meaningless and mere surplusage. If effect is to be given to the first paragraph alone, then the second paragraph would be given no effect whatever. This will not be done unless absolutely necessary, but all the provisions will be construed in harmony when it can be done. The expression, "free from all charge or limitation," in the first paragraph of this item may well be construed to mean that there shall be no encumbrance or charge fixed upon the estate, or limitation as to her use and enjoyment of the estate devised to her, or limitation upon the manner of her enjoyment of it. So also the words, "to her own proper use, benefit, and behoof," are as applicable to a life-estate, or an estate for years, as to an estate in fee simple, merely excluding any trust, use, or benefit for others. Immediately following this is the provision that in the event the testator and his wife should die without children, then he devised the property to Froney Flowers, "to have and to hold the same in fee simple, to her and her heirs forever." While a devise or grant in this State does not require the use of the word "heirs" in order to convey a fee-simple estate, yet the fact that the devise to Mrs. Tyler does not expressly declare a fee-simple estate, or use the word "heirs," and the devise to Froney Flowers does both of these things, indicates that the person who drew the will intended some difference in the estates to be granted. The words, "nevertheless this bequest and devise shall in no wise interfere or limit my wife's interest in said real estate," appear to have been added for fear that her use and enjoyment might be hampered or fettered by this additional devise to Froney Flowers. Sometimes a remainderman may proceed against a tenant in a particular estate because of waste, or the like. It would seem, by reason of this additional devise to her sister, that the husband did not desire any interference of this kind with his wife. It will be noticed that he does not say here that his wife has a fee-simple or absolute

estate, but that this devise shall not interfere with her "*interest* in said real estate." The fact that the draughtsman evidently understood the meaning of the expression "fee simple," that it was nowhere used in connection with the devise to Mrs. Tyler, but was used in connection with the additional devise to her sister, and that in referring to what was devised to Mrs. Tyler it was not spoken of as a fee-simple estate, but as her "interest" in the property, indicates that the testator did not intend to devise to his wife an absolute fee-simple estate free from all conditions. The provision that "should said Froney Flowers die before my said wife leaving no child or children, then this devise shall revert and become a part and parcel of my general estate, subject to any disposition that my wife may make of the same," is not so repugnant to what precedes as to render it void. It provides for two things: first, that if Froney Flowers should die before his wife, without child or children, the devise to her should not inure to her collateral heirs, but the property should revert to the testator's general estate; and secondly, he evidently desired that in that event his wife should have the right to make final disposition of it, and that it should not necessarily fall into the residue and be governed by item second. Taking the entire item all together, we think the proper construction is this: The testator devised to his wife the real estate described in this item in fee, but this fee was determinable upon the condition named, to wit, that the testator and his wife should die without children. In that event, upon her death the property should pass to Froney Flowers in fee simple. If Froney Flowers should die before the testator's wife, leaving no child or children, then the property should revert and become part of his general estate, but his wife should have the right to make disposition thereof, excepting it from the method of distribution provided for in item second, if she so desired. It is not absolutely clear whether the testator meant that this disposition should be by deed or will, or either at the option of his wife, but most probably, as no limitation is put upon the word "disposition," he intended to confer the power of disposition upon her as she might choose, in case of a reversion upon the death of Froney Flowers without child or children. It can not be said that this added provision for the benefit of the wife is inconsistent with the grant to her of a fee determinable upon condition. If the devisee in remainder under such condition should die without child

or children, the wife would have the added right of disposition.

2. It is contended that under item second Mrs. Tyler took an absolute fee-simple estate in the realty; that she took an estate for life or widowhood, with remainder to the testator's heirs at law according to the laws of descent in this State; that she, as his widow, was the only heir at law; and that therefore the estate for life or widowhood united with the estate in remainder, and she thus acquired an absolute fee-simple estate. The brothers and sisters of the testator and the descendants of brothers and sisters deny this contention. They contend that the proper construction of item second, as to the real estate, is to give Mrs. Tyler a life-estate or estate during widowhood, and after her death an estate in remainder to them;—that having given her a life-estate with remainder to his lawful heirs, he meant his lawful heirs other than her. As to the personalty referred to in this item, it will be observed that the first part of the item creates a life-estate in Mrs. Tyler, while the second part, which refers to the remainder estate, does not include the personalty, but only the real estate. Therefore, as to the personal property, an estate for life or widowhood is created in Mrs. Tyler, with no provision as to any remainder.

It is contended that Mrs. Tyler takes a particular estate as devisee thereof, and also takes the remainder estate as sole heir, under the description of the person or persons to take in remainder. If this contention is correct, then item second of the will might be briefly stated thus: A testator devises to his wife an estate in the residue of his property, which he distinctly limits to an estate for life or during widowhood. He desires to make provision as to what shall become of the real estate upon her death or remarriage, and in order to do this he provides that it shall go to his wife. It is hardly likely that the testator intended to use so many words and so many provisions for the purpose of conveying a fee-simple absolute estate to his wife. It is as if he had said: "I create a life-estate in favor of my wife, which I distinctly limit as being a life-estate, and after her death I then create a remainder in her." It is quite true that there are a number of cases which hold that where a testator gives property to a tenant for life, and on the death of the life-tenant to the testator's next of kin, and there is nothing in the context to qualify or in the circumstances of the case to exclude the natural meaning of the testator's words, the next of kin of the testator living

14

at his death will take; and if the tenant for life be such next of kin, either solely or jointly with other persons, he will not on that account be excluded.    There are other cases which hold to the contrary.    Ordinarily in this State a limitation over to "heirs" means to children.    But the testator did not mean this, because he had no child, and made a different provision if one should be born.    So that we must look from the ordinary signification to the meaning of the testator.    In the present case Carl F. Theilig formerly lived in Noulitz, Saxon Altenburg.    He came to America many years ago, leaving brothers and sisters in Germany.    He married in this country, but never had any children.    None of his family are in America, except one niece in California.    After he came to this country he adopted the name of Charles F. Tyler, instead of the German name of Carl F. Theilig.    He has brothers and sisters, and descendants of brothers and sisters, in Germany.    In the light of these facts we must look for his intent in the use of the expressions in item second of the will.    If the testator has used clear and unambiguous words, and there is nothing in the context to qualify the meaning of such words as "heirs" and "next of kin," they will take effect according to their ordinary signification, although the result may be somewhat anomalous.    Did the testator mean that after his wife's death the residue in which she had a life-estate should then descend to her in fee simple?    The words, "shall be distributed to," also throw some light upon the intention of the testator.    It is true that, if there is only one person entitled to an estate, such expressions as "distribute" or "divide" would not create more devisees or distributees; but where the testator had brothers and sisters among whom an estate might be distributed or divided, and where the term is not as apt when applied to a single individual, it may be considered as throwing some light upon the intention of the testator.    Further, the testator was careful in this connection to note the fact that he was known as Charles F. Tyler in the United States and Carl F. Theilig in Germany, and that the heirs referred to were the heirs of Charles F. Tyler in the United States, or Carl F. Theilig, formerly of Noulitz, Saxon Altenburg.    If the testator had intended that his wife alone should have the remainder in fee, what possible reason could there have been for him to refer to the fact of his former German name and persons who might be his heirs under that name.    Again, in item fourth,

the testator's wife is nominated as his executrix, and it is provided that in the event of her death before entering upon said trust, "or before the completion of said execution of this will," then Froney Flowers should become executrix. Now if the testator intended merely to make his wife his sole devisee in fee simple and also his executrix, there could be no reason for providing for another executrix in case of her death before the completion of the execution of the will. It would seem that the testator contemplated something further to be done in the execution of this will besides merely turning over the property to his wife. He evidently did not mean to refer merely to the payment of debts, because the will nowhere refers to the existence of debts, nor does he make—what is quite a common provision with testators—a statement that debts shall be paid. Taking the entire will together, it is evident that the testator did not mean by the second item of the will simply to provide that his wife should have a life-estate, and upon her death the remainder interest should descend to her; or that she should have an estate for widowhood, and that if she remarried the remainder should "descend" to her. The fact that the husband provided an estate during widowhood which was to terminate upon the remarriage of the widow evidently indicates that he intended to lessen her estate in case of remarriage, not to increase it. If the contention of the plaintiff is correct, the testator worked exactly the opposite result, because his wife clearly has an estate under the will so long as she remains a widow, but if she remarries she gets a fee-simple estate. It is hardly likely that the testator intended to accomplish this result. In the first item he had provided a home for his wife which she would not lose in case of remarriage. He also left her the personalty, which is not affected by the remainder. It appears most likely that his memory reverted to the home of his early days, and that he did not wish, in the event his wife died childless or remarried, that this other property should pass to strangers, but to his own blood kin.

It is suggested that the expression, "that is to say, the lawful heirs of Charles F. Tyler in the United States of America, or the lawful heirs of Carl F. Theilig, formerly of Noulitz, Saxon Altenburg," being in the alternative, renders the devise in remainder void. We do not think so. In view of the fact that Mr. Tyler's original name was Theilig, that when he came to America he adopted the

name of Tyler, and that in providing for this remainder he doubt-
less had in mind the fact that in Germany he might still be called
Theilig and that persons claiming as his heirs might know him
under that name; and in view of the fact that there are no heirs in
America except his wife, that one niece had come to the United
States who might possibly have answered to the description of an
heir if her father died, and that others might come to this country
,as two of the family had done, it seems that the more natural con-
struction to put on the will is that the testator, in providing for the
distribution to his heirs, merely wished to identify himself as
Charles F. Tyler in America and Carl F. Theilig in Germany, and
to direct that distribution should be made according to his will,
whether the claim be made under the name of Tyler or Theilig.
This idea is further borne out by the fact that he signed the will
in both names, Tyler and Theilig. At all events, the construction
indicated is certainly to be preferred to one which would render the
devise void.

It is also suggested that item third is in direct conflict with item
second, and therefore destroys its efficacy. We can not concede the
soundness of this contention. The will was executed in May, 1897,
and the testator died in November, 1903. Item third was merely
an alternative or conditional provision, made in case there should
be a child born to himself and wife. No such child was born,
either before his death or afterwards, and item third never took
effect. Mere alternative provisions, one of which creates a trust if
a child be born and the other a different distribution if there be no
child born, are not in conflict, and one does not destroy the other.

A number of authorities have been cited by counsel for the
plaintiff to sustain their position as to the words "heirs" and "next
of kin" when used in wills, but we do not think they are in point.
The only Georgia case cited is that of *Wiggins* v. *Blount*, 33 *Ga.* 409.
That case, however, is very different from the one at bar. There an
estate was created in the testator's wife for life or during widow-
hood, for the benefit of herself and the testator's family, with the
provision that if any of the children should leave the family, by
marriage or otherwise, they should cease to share in the benefits of
the estate during the life of their mother. A daughter married
and subsequently died without issue; and her husband surviving her
remarried and also died without issue. His widow sued the ad-

ministrator d. b. n. of the original testator for a child's share of the estate, the testator's wife having died in the mean time; and it was held that she could recover. In the present case there is no provision for holding the estate together until a given time and then dividing it among the widow and others; but according to the contention of the widow the property constitutes for her a life-estate, with a remainder to her after her death or remarriage. It is not a case of division among a class of which she is a member, but it is claimed that she alone is meant by the description of who is to take in remainder, and that all the words about Theilig and Germany and distribution are surplusage. We do not hesitate to hold that this claim is without foundation.

*Judgment affirmed. All the Justices concur, except Lumpkin, J., disqualified, and Beck, J., not presiding.*