C. S. GUILFORD, Guardian, et al., Appellants, v. ALMENA ELIZABETH GARDNER et al., Appellees.

**WILLS:** Nature and Extent of Testamentary Power—Defeasible
1 Fee. A testator may devise an estate in fee, and may, immediately in connection therewith, provide for the destruction of such estate and the passing of the same to a different devisee on the happening of a specified event. So held where the devise provided that, if the devisee died without living issue, the property should then pass to another.

**WILLS:** Construction—Conditions—''Dying Without Issue.'' It is not within the proper power of the court to place a strained limitation upon plain, definite and unambiguous clauses of a will. So held under a will wherein testator provided that a devise should be defeated *"if he* (devisee) *should die without living issue,"* and the court refused to hold that such condition was limited to the death of the devisee *during the lifetime of testator.*

**WILLS:** Construction—Words of Substitution. Principle recognized that a testator may devise a fee, and in connection therewith validly provide that, on the happening or not happening of a specified event, said devise shall be defeated or terminated, and some other devisee shall be substituted in lieu of the first devisee.

**WILLS:** Construction—Qualified or Defeasible Fees—Rule of Construction. The partiality of the law for *vested* or *absolute* estates is a rule of construction only, and wholly inapplicable when the testator has clearly and unequivocally provided that a devise in fee shall be defeated *"if devisee die without issue living."*

**WILLS:** Construction—Conditional Fee—Power to Sell—Effect. A devise which, by its terms, is a *conditional* fee, is not necessarily converted into an *absolute* fee by added provisions which, directly or indirectly, invest the devisee with power to sell and convey.

**WILLS:** Construction—Practical Construction by Devisees—Effect. The practical and reasonable construction of a will by devisees is quite significant of the true meaning of said will.

**WILLS:** Construction—Nature of Estate Created—Limitation Repugnant to Fee. A clear devise of a *conditional* or *defeasible* fee may not be defeated by invoking the principle that a testator may not make two inconsistent or repugnant devises; for instance, an absolute devise in fee and a subsequent devise repugnant thereto.

*Appeal from Decatur District Court.*—THOMAS L. MAXWELL, Judge.

SATURDAY, APRIL 7, 1917.

REHEARING DENIED MONDAY, SEPTEMBER 24, 1917.

ACTION for the construction of the last will and testament of R. D. Gardner, deceased. From the finding and

judgment of the district court, the plaintiffs appeal.—*Affirmed.*

*C. W. Hoffman* and *Ed. H. Sharp,* for appellants.

*V. R. McGinnis* and *Miles & Steele,* for appellees.

WEAVER, J.—R. D. Gardner was a prac-

1. WILLS: nature and extent of testamentary power: defeasible fee.

ticing physician, residing in the town of Leon, Iowa, for many years. At the time of his death, he was owner of over 1,200 acres of land in Decatur County and two residence properties in Leon, and was also possessed of some personal property, including moneys and credits to the value of over $10,000. He died testate in the year 1912, leaving surviving him his wife, Almena Elizabeth Gardner, and one child, a son, Charles E. Gardner. The material provisions of the will (omitting merely formal parts) are as follows:

"Second. I will, bequeath and devise to my beloved wife, Almena Elizabeth Gardner, the following real estate, to wit: Lot Number one (1), in Block No. five (5), in Richardson's Addition to Leon, Iowa, the same being the homestead now occupied by myself and wife. I also bequeath, devise and give unto her my beloved wife, one half in value of all the real estate and personal property, including moneys and credits of every kind and description of which I may die seized, saving and excepting the house and lot hereinafter bequeathed and devised to my beloved son, Charles Edgar Gardner.

"Third. I will, bequeath and devise to my beloved son, Charles Edgar Gardner, the following real estate, to wit: Lot No. two (2), in Block No. five (5), in Richardson's Addition to Leon, the same being the property now occupied by him as a homestead. I also give, devise and bequeath unto my beloved son one half in value of all the real estate and personal property, including moneys and

credits of every kind and description, of which I may die seized, saving and excepting the house and lot hereinbefore devised to my beloved wife.  Provided however, the portion of my estate herein willed, devised and bequeathed to my beloved son, Charles Edgar Gardner, is on condition, that if he should die without issue, living, then the portion of my estate devised and bequeathed to him shall revert and go to my beloved wife, Almena Elizabeth Gardner.

"Fourth.  That at my death, in case my beloved wife and son cannot agree upon a division of the property of which I may die seized, then it is my will and wish that each shall select a good man to make division of my estate between my said beloved wife and son, and in case the two so selected cannot agree upon a division, then the two so selected shall select a third person who shall assist in making such division of property, but the persons so selected to make such division of my estate, as herein directed, shall before entering upon their duties go before the clerk of the court and take oath to discharge their duties as such referees to the best of their knowledge and understanding.

"Fifth.  Having full faith and confidence in my beloved wife, Almena Elizabeth Gardner, and my beloved son, Charles Edgar Gardner, it is my will that they act as executrix and executor of my last will and that they so act without giving bond or taking out papers of administration, or being put to any expense save and except the probating of this my last will and testament.

"In Witness Whereof, I have hereunto signed my name this 6th day of November, 1886.

"R. D. GARDNER.

"Witnesses: Frank Gardner, Will Gardner.

"Codicil—After due consideration I have concluded to have my administratrix and administrator give bail for the

faithful performance of their duties, and take out letters of administration.

"R. D. GARDNER."

Prior to the date of this will, the son, Charles E. Gardner, had married Carrie Guilford. The evidence tends to show that the relations between the testator and his son's wife were not altogether harmonious or pleasant, the testator being inclined to the view that the daughter-in-law was extravagant and wasteful. The son outlived his father, and died intestate and childless February 3, 1915, survived by his wife, Carrie Guilford Gardner. Some years before the death of the testator, Carrie Guilford Gardner became of unsound mind and has never recovered therefrom. Shortly before the son's death, a written contract was entered into between him and his mother, Almena Elizabeth Gardner. As this writing is in some respects obscure, and an abbreviated statement of its general effect is somewhat difficult, we extend this statement for its quotation in full, as follows:

"Agreement of Settlement.

"Know all men by these presents, that whereas, one R. D. Gardner, husband of the undersigned, A. E. Gardner, and father of the undersigned, C. E. Gardner, they being his sole and only heirs at law and legatees, did on the 6th day of November, 1886, make and execute his last will and testament, giving to the said A. E. Gardner, his widow, Lot one in Block five, Richardson's Addition to the Town of Leon, Iowa, the same being their homestead, and the undivided one half in value of all the real estate and personal property, including moneys and credits of every kind and character of which he might die seized, and whereas, the said R. D. Gardner did in said instrument give to his son, C. E. Gardner, Lot two in Block five of Richardson's Addition to the Town of Leon, Iowa, and the undivided one

half in value of all of the real estate and personal property, including moneys and credits, of every kind and description of which he might die seized, upon the condition that the part willed to the said C. E. Gardner should, if he should die without issue living, be devised, bequeathed and revert to his said wife, A. E. Gardner, and whereas, said will was duly probated on the 25th day of March, 1913, and recorded in Book 8, page 114 of the Probate Records of the District Court of Decatur County, Iowa, and whereas, the said C. E. Gardner is now in ill health and no settlement or distribution of said property ever having been made by and between the said A. E. Gardner and C. E. Gardner, and that the same consists of a large amount of real estate, to wit: 1,226 acres of land in Decatur County, Iowa; certain residence properties in the town of Leon, Iowa, and a large amount of moneys and credits amounting to about the sum of $10,000.00 or more, and that said parties hereto are desirous of settling said matters amicably, and to the best interests of both,

"It is now therefore agreed that the said C. E. Gardner is to have and retain in his own right and name all of the property to which the title now stands in his own name, for his own use and benefit, and that all of the personal debts of the said C. E. Gardner shall be paid out of the estate and the proceeds thereof of R. D. Gardner. That the said A. E. Gardner is to have and retain Lot one, Block five, Richardson's Addition to the Town of Leon, Iowa, bequeathed to her in said will, and all of the lands now standing in her own name for her own individual use and benefit, and that the remainder of said estate shall be placed in the hands of Fred Teale, as trustee, or in case of his inability or incapacity to act as such trustee, then someone to be appointed by the court, providing however, at all times that the said C. E. Gardner is not able on account of ill health or other inability to look after and care for

said estate but that in case the said C. E. Gardner at any time is able to look after and care for said estate by reason of his physical health and strength then that the same is to be turned back into his hands for that purpose.

"That it is agreed that out of the said estate there shall be set aside a trust fund in the sum of two thousand dollars to be held by the said Fred Teale, as trustee, or in case of his inability to act, someone to be appointed by the court, and his successors, whoever they may be, and that the income therefrom is to be turned over to the Leon Cemetery Association for the purpose of caring for the lot and graves of the family of R. D. Gardner, including the parties hereto, and any other members that may be buried thereon, and, to care for the lot and graves of the mother of A. E. Gardner and others buried on said lot, and the remainder of said income to be used generally for the care and beautifying of said cemetery, said fund to be made a perpetual Trust Fund for that purpose. That the sum of one thousand dollars shall be set aside as a trust fund to be held by the said Fred Teale as trustee, or his successors as appointed by the court herein, the income from which shall be used for the purpose of caring especially for the lot and graves of the father and mother of Carrie Gardner, and others buried thereon, in the cemetery at Toledo, Iowa, and, any excess after caring for said lot and graves to be used for the general care and beautifying of said cemetery. Said fund to be perpetual, and the income therefrom to be used for the purpose above set out.

"It is estimated that the real estate belonging to said estate is of the reasonable value of eighty thousand dollars, and that the personal property belonging thereto is of the reasonable value of about ten thousand dollars, making a total in value of some ninety thousand dollars.

"That in case of the inability or incapability of the said C. E. Gardner to continue active charge of said estate

and property, that the said Fred Teale shall be' chosen as
trustee thereof, and shall continue and conduct the affairs
of the same, but that in case the said C. E. Gardner at any
time is able to look after the affairs of said estate, that
the same is to be returned to his possession, custody and con-
trol to be continued as he and his mother may agree.

"That while the same is in the hands of said trustee
there shall be set aside and used for the use and benefit of
Carrie Gardner, wife of the said C. E. Gardner, in case she
survives him, the sum of sixty-five dollars per month as
long as she shall live, and, that the remainder of the income
from said property shall be turned over to A. E. Gardner,
after paying the expenses of said trusteeship, to be used
by her as she may desire.

"That this agreement does not include any of the per-
sonal property or real estate actually belonging to the said
A. E. Gardner or C. E. Gardner, and that the final dispo-
sition of said property shall be made by the parties C. E.
Gardner and A. E. Gardner as they may hereafter agree,
the same to be done by will or proper instrument as their
attorney may determine.

"It being expressly agreed and understood that in case
the said C. E. Gardner shall survive his mother, A. E. Gard-
ner, that no will shall be made by her, willing or devising
the property of said estate or her interest therein, ex-
cepting that may be made by the agreement of the parties
hereto hereinafter entered into, but that the same shall
revert absolutely to the said C. E. Gardner to be devised
and disposed of by him as to him may seem proper and
best at all times taking into consideration the arrange-
ment that may be made between him and his mother with
reference thereto.

"This agreement is made at this time on account of
the illness of C. E. Gardner, and in case of his recovery
and ability to take charge of and handle said estate, is to

be of no further force and effect, unless the same shall be approved or in any manner changed by the parties hereto.

"Witness our hands this 16th day of January, 1915.

"A. E. Gardner.

"C. E. Gardner."

After the death of Charles E. Gardner, differences of opinion having arisen between his mother, Almena Elizabeth Gardner, and the guardian of his widow, concerning the proper interpretation and legal effect of the will of R. D. Gardner, this action was brought to determine and settle the same.

The question presented to the court may be stated as follows: It is the contention of the guardian that, subject only to the death of the son without issue during the life of his father, the clear intent of the testator was to vest the son with an absolute and unconditional title to that share of the estate described in the third paragraph of the will. On the part of the widow of the testator, it is argued that, properly construed, the will vested the son with no more than a conditional or defeasible fee in the property devised, a title which could become absolute only upon the death of Charles E. Gardner leaving living issue; and that, it being conceded that he died without issue, the title then reverted or passed to his mother.

*2. WILLS: construction: conditions: "dying without issue."*

On the first theory, the guardian's ward, Carrie Guilford Gardner, as widow of Charles E. Gardner, is entitled to a statutory distributive share in the property which was thus acquired by her in her husband's lifetime. On the other theory, the condition of title in Charles E. Gardner having failed, the entire property passed under the will of his father to Almena Elizabeth Gardner, and the widow of the son has no dower or distributive share therein. The trial court sustained the latter contention, and the guardian appeals in his ward's behalf.

Stated in briefer terms, the rights of the parties turn first upon the question whether the words of the testator, "if he should die without issue living," are held to have reference solely to the death of the son in the lifetime of the father, or are held to be operative upon the death of the son without living issue at any time either before or after the death of the testator.

I.   Appellant's brief has been prepared with entire disregard of our rules, but we have examined it with care to ascertain as clearly as may be the points relied upon for a reversal of the judgment below.

It is first argued that our prior decisions furnish controlling precedents for construing the condition in this will as having reference exclusively to the possible death of the son in his father's lifetime.   Upon that point, our attention is called to *Blain v. Dean,* 160 Iowa 708, *Talbot v. Snodgrass,* 124 Iowa 681, and other cases of that class.   None of these cases is quite in point.   In the case at bar, while the initial sentence or clause of the third paragraph of the will is framed in general terms, which, standing alone, divorced from the modifying terms which follow in the same connection, would confessedly be sufficient to vest in the devisee an absolute fee, yet attached thereto, as part and parcel of the same paragraph, is a clear and unequivocal condition that the right and title so devised will become absolute only on the death of the devisee leaving living issue, and that upon failure of such condition the entire property shall vest in the testator's widow.   In the *Blain* case, the provision was, "If any of my children shall have died leaving no issue, I direct that his share shall be divided among those leaving issue and among my other children then living."   Here it is too clear for reasonable question that the words, "shall have died," and "then living," have direct reference to the time when the will became effective, that is, at the death of the testator.   It provides nothing

but a plan or basis of distribution, and attaches no condition whatever to any gift or devise made by the will. The same may be said of the will in the *Talbot* case. Indeed, we think no case can be found—certainly none has been cited—where a condition which is attached to the substance of a devise, as distinguished from a provision designating a plan of distribution or designating the persons or classes to share in the estate, has been held to be satisfied or to become inoperative because the devisee has outlived the testator. The maker of a will, being competent to give or withhold his bounty, may attach thereto any reasonable condition, and provide that, upon failure of the condition, the title to the property or thing devised shall pass from the devisee first named to some other person. A devise conditioned for a reversion or change of direction upon the death of the devisee without living issue is not, as counsel for appellant seem to think, a devise of a mere life estate. Such a devise vests the beneficiary with a fee, conditional, it is true, but none the less a fee, and carries with it all the rights of possession and control which pertain to full ownership, subject, of course, to the possibility of reverter on failure of the condition.

3. WILLS: construction: words of substitution.
That the testator in this case attached the condition for a reversion of the title (or perhaps, more accurately stated, the condition for the substitution of another beneficiary) to the substance of the gift to his son, is hardly open to reasonable doubt. He had the undoubted right to attach such condition to his gift, and it would be difficult indeed to express such intent in clearer or more explicit terms. The meaning being plain and the intent being lawful, there is no room left for controversy. It is not for the court to question or consider the absolute justice of the condition; its only function is to ascertain the testator's intent and give it effect. The intentions being plainly

stated, the reasons or motives prompting it are not impor-
tant. The testator may or may not have allowed him-
self to be influenced by dislike or distrust of his son's wife,
or the condition attached to the devise may have had its
origin in the desire, which is shown in many persons, to so
hedge about his estate as to keep it as long as possible with-
in his own immediate family; but whatever the fact in this
respect may be, he did provide that the gift to his son was
"on condition that, if he die without issue living," then
such portion should "revert and go" to his own widow. The
reference to the son's death without issue is accompanied by
no words limiting its meaning to death in the lifetime of the
testator, nor by other words by which such limitation can
be fairly implied, and without such words or fair impli-
cation of such meaning, the devise must be given effect
accordingly.

There is nothing in any other paragraph of the will nor
in the instrument as a whole to give rise to any ambiguity,
and the court is not authorized to override any of its pro-
visions by construction. That such is the well settled doc-
trine of the law of wills, see *Collins v. Collins,* 116 Iowa
703; *Estate of James,* 146 N. Y. 78, 100; *Wilhelm v. Calder,*
102 Iowa 342; *Wilson v. Linder,* (Idaho) 110 Pac. 274; *Bar-
rett's Estate,* (Neb.) 123 N. W. 299; *Britton v. Thornton,* 5
Sup. Ct. Rep. 291; *Spencer v. Spencer,* (Ill.) 109 N. E. 300;
*Calvin v. Springer,* (Ind.) 63 N. E. 40.

4. WILLS: con-
struction:
qualified or de-
feasible fees:
rule of con-
struction.

Appellants invoke in support of their
theory the proposition frequently announced
by this court that the law favors that con-
struction of a will which effects the crea-
tion of a vested or absolute estate as against one which is
merely contingent or conditional. But it must be remem-
bered in this connection that this is a rule of construction
only, and rules of construction have no application where
the devise is clear and unequivocal, and the intent therein

expressed is not inconsistent with any other provisions of the will.

5. WILLS: construction: nature of estate created: power to sell: effect.

Again, counsel say that the will, fairly construed, vests the son with authority to sell and dispose of the property devised to him, and that this is inconsistent with the idea that the testator intended to give him anything less than an absolute fee. But this argument involves a fundamental misconception of the law. It is not correct to say that the power to sell and dispose of property attached to a devise of anything less than a fee has the effect to convert such a devise into an absolute title. For example, a testator may, by appropriate language, devise a life estate, adding thereto power to the life tenant to sell and convey the fee, and, if the life tenant die without exercising the power, the remainderman succeeds to the title. It is true, however, that, if the construction of the devise be open to question or doubt, the power to convey is a circumstance of very material importance in ascertaining the real intent of the testator. Moreover, a life tenant to whom no power to convey has been expressly devised may still sell and dispose of his life interest, and his grantee will thereby be clothed with all the right and title of the grantor. So, too, the holder of a conditional fee may sell and convey such fee, vesting his purchaser with all the attributes of ownership, subject only, as we have already said, to the possibility of reverter or diversion of the title upon failure of the condition attached thereto.

We discover nothing in the will of Dr. Gardner which seems intended to vest the son with any other or greater power or authority than such as the law attaches to the ownership of a conditional or defeasible fee.

6. WILLS: construction: practical construction by devisees: effect.

There is still another feature of this case which is not without material bearing upon the issue we are here considering. We refer to the practical construction which the

mother and son placed upon this devise, in the contract made between them after the will had become effective after the death of Dr. Gardner. If the appellant's contention be correct, the title to all property described in the third paragraph of the will had then become complete in the son, unincumbered and unrestricted by any condition in favor of the mother; yet we find them both here expressly recognizing the conditional character of the title devised to the son. In view of our conclusion of the clear expression of the testator's intent, it is unnecessary for us to decide how far, if at all, the parties to this contract are concluded by its terms upon the question of their respective rights under the will; yet if the construction of the devise were one open to any reasonable doubt, the fact that the son, the one person adversely affected by the condition attached thereto, survived the testator more than two years, and never in his lifetime, so far as the record shows, questioned the conditional character of his title, it is significant of the meaning and effect of the testator's language as it appeals to the ordinary mind.

II. As an alternative proposition, appellants rely upon the rule by which, when the testator has made a clear devise of a fee or absolute title, the estate in such property is thereby exhausted, and it is not within his power to control the course of the descent of the devised property after the death of the devisee. While there has been some division of opinion in this court as to the application of this rule to particular cases, the correctness of the abstract legal proposition is not open to dispute. Starting from this foundation, it is argued by counsel that, as the devise in the third clause of the will begins with the declaration, "I will, bequeath and devise to my son, Charles Edgar Gardner," the homestead property occupied by him, and again, "I give, devise and bequeath unto my son one-

*7. WILLS: construction: nature of estate created: limitation repugnant to fee.*

half in value of all the real estate and personal property,"·
—language which, standing alone, would undoubtedly vest
the devisee with an absolute fee,—it must be given such ef-
fect without regard to the condition contained in the same
paragraph. No precedent has been cited, and we think none
is to be found, going to this extent. To sustain the position
taken by counsel, the court must dismember the testator's
statement of his intent and give effect to one clause or phrase
thereof and deny any force or effect to the express qualifica-
tion or condition attached to such devise. It should be kept
in mind that, while a testator cannot make two inconsistent
or repugnant devises and both be declared legally valid, it
is undoubtedly within his power to devise a conditional or
defeasible fee. In the case of a manifest repugnancy or
inconsistency, the court may declare which, if either, of
such provisions shall be held valid; but where a devise is
made subject to a clearly expressed condition, it is not with-
in the province of the court to sever the condition from the
gift and declare absolute and unlimited the title which the
testator has made limited and conditional. *Meek v. Briggs,*
87 Iowa 610; *Stivers v. Gardner,* 88 Iowa 307; *Wilhelm v.
Calder,* 102 Iowa 342; *Mansfield v. Shelton,* (Conn.) 35 Atl.
272; *Canaday v. Baysinger,* 170 Iowa 414; *In re Barrett's
Estate,* (Neb.) 123 N. W. 299; *Tyler v. Theilig,* (Ga.) 52 S.
E. 606. To read this will as applicants would have it read,
and totally disregard the condition attached to the devise
to Charles E. Gardner, is to destroy, and not to construe.
The sole justification and the only purpose of a judicial
construction of a will is the development of the intent of
the testator. In so doing, every provision of the instru-
ment, if lawful in character, is to be given due effect. The
court may not make a will for the testator, nor impose upon
the will a forced or unnatural construction to accomplish
what may seem to be a more just or appropriate distribu-
tion of his estate. The will in this case was made 25 years

before the testator's death. No question can be raised as to his testamentary capacity at that time. During the remainder of his life, he had abundant opportunity to reflect upon the disposition he had made of his estate and to determine whether he desired to make any changes therein. No change was made, and the will speaks as from the date of his death.

Much has been said in argument of the circumstances surrounding the testator and of the relations between himself and wife on the one hand and the son and son's wife on the other, but we find nothing therein which justifies us in giving to the language of his will any other than its plain and natural import and meaning, and this we think necessitates an affirmance of the conclusion reached by the trial court.

For the reasons stated, the judgment appealed from is —*Affirmed.*

GAYNOR, C. J., PRESTON and SALINGER, JJ., concur.