ALICE JORDAN, Guardian of Gracie Jordan, a minor, v.
    ARTHUR HINKLE, HENRY HINKLE, LORA CRAPFEL, A.
    F. CRAPFEL AND MARY HINKLE, Appellants, v. GRACIE
    JORDAN, KEO JORDAN AND J. O. HUNNELL, Executor,
    Defendants.

**Wills:** "DYING WITHOUT HEIRS" CONSTRUED.  A testator devised cer-
    tain lands to two granddaughters in severalty, subject to the
    condition that if they "should die without heirs" the lands
    devised should "revert back" to such of his heirs as might be
    living at that time.   The will also provided that the several
    devises therein made should take effect after the testator's
    death.   *Held* that, as the estates could not revert until vested,
    and could not vest till the testator's death, the "dying without
    heirs" contemplated was after and not before, the testator's
    death, and, hence, the granddaughters took at the testator's
    death conditional estates only, subject to being determined by
    their dying without heirs; and that title to the lands would
    not be quieted in the granddaughters against the other heirs.
    Stress is laid, too, upon the fact that the testator's age and
    feeble health made it unlikely that he should have contem-
    plated that any of his grandchildren would die before him.

*Appeal from Davis District Court.*—HON. T. M. FEE,
                    Judge.

FRIDAY, APRIL 13, 1900.

THE plaintiff, as guardian, asks that the title to cer-
tain real estate be quieted in her ward, Gracie Jordan, as
against defendants (appellants), and for an order to sell
said real estate.   The question involved is as to the proper
construction to be given to the last will and testament of
James H. Jordan, deceased.   On hearing had, said will was
construed as claimed by the plaintiff, and decree rendered
accordingly, from which the defendants appeal.—*Reversed.*

*McNett & Tisdale* for appellants.

*E. E. McElroy* for appellee.

GIVEN, J.—I. The will of Mr. Jordan, after direct-ing in the first paragraph, the payment of debts and funeral expenses out of the personal property, provides, in the second, that the proceeds of the personal property remain-ing shall be divided equally among his grandchildren, nam-ing them, being the plaintiff's ward and the defendants (appellants) above named. The third paragraph devised "to the heirs at law of my daughter Sallie Hinkle, to share and share alike, the following described real estate," describing certain lands. The fourth parapraph de-vised "to Keo Jordan, daughter of my deceased son Victor P. Jordan, the following real estate," describing certain lands. The fifth devises "to Gracie Jordan, daughter of my deceased son H. C. Jordan, the following described real estate," describing certain other lands. The sixth paragraph, the construction of which is the subject of this controversy, is as follows: "Sixth. It is my express will that in case either of my said granddaughters, Gracie Jordan or Keo Jordan, should die without heirs, then, and in that event, the real estate herein bequeathed to them, or either of them, as the case may be, shall revert back to such of my legal heirs as may be living at that time, in equal proportion." The contention is as to the construction to be given to the words "should die without heirs," as found in said sixth para-graph. There is no dispute but that the word "heirs" means heirs of the body. See *Furenes v. Severtson,* 102 Iowa, 323. The plaintiff contends that the words "should die with-out heirs" must be construed as meaning that, if Gracie or Keo should die without heirs before the testator's death, then the estate would have reverted back; while the defendants (appellants) claim that the estate devised to either is to re-vert back on the death of the devisee without heirs, whether

her death was before or after that of the testator. The learned district judge construed the will as claimed by the plaintiff, and held that, as Gracie survived the testator, her estate has become an absolute estate in fee simple. If the will is to be construed as claimed by the defendants (appellants), Gracie and Keo have but a conditional estate, and the land of each is subject to revert back on her death without heirs of her body.

II.    Counsel quote at length from text-books and cases, and present numerous citations, yet, as we said in *Wilhelm v. Calder,* 102 Iowa, 342, "cases are of little help, except as they settle rules and principles by which to arrive at the intent of the testator, which is always the pivotal point of inquiry in such controversies as this." A primary rule of construction is that the intention of the testator, when ascertained, and not contrary to law, must control. *Jordan v. Woodin,* 93 Iowa, 453; *Meek v. Briggs,* 87 Iowa, 610. That intention must be arrived at from the will alone, unless it be ambiguous and uncertain as to the estate or thing bequeathed or devised, or as to the person for whom the bequest or devise is intended. When thus ambiguous, extrinsic evidence will be considered, not to vary the plain effect of the language used, but for the purpose of making intelligible in the will that which without its aid cannot be understood. *Moran v. Moran,* 104 Iowa, 216 (39 L. R. A. 204); *Evans v. Hunter,* 86 Iowa, 413 (17 L. R. A. 308); *Furenes v. Severtson,* 102 Iowa, 322. "Where the language is plain and unequivocal, there is no room for construction." *Smith v. Runnels,* 97 Iowa, 55. Looking to the will, we see that in the fourth and fifth paragraphs devises are made to Keo and Gracie, respectively, which, if nothing further appeared, vested them at the death of the testator with absolute title in the lands devised. In the sixth paragraph a condition is made as to their title, namely, that, in case either "should die without heirs,"—that is, heirs of her body,—the real estate devised "shall revert back." By the

eighth paragraph of the will it is provided "that the real estate hereinbefore described shall go to my heirs in the manner and in the proportions I have specified herein, after my death." This shows clearly an intention that the devises should not vest in the devisees until the testator's death. The condition of Keo's and Gracie's title is that, in case of death without issue, the real estate shall revert back. It could not "revert back" until it had become vested; it could not become vested during the life of the testator; therefore, the death without heirs could not have been intended to mean death before the decease of the testator. Assume that Gracie had died without issue before the death of the testator, the land devised to her would never have become vested in her. It would have gone to the heirs of the testator, not by reversion, but by inheritance, as if no will had been made. Had Gracie died, leaving issue, before the testator's death, the land would have vested in the issue on the death of the testator, and there would be no reversion. In other words, a reversion could not follow from the death of Keo or Gracie before that of the testator, whether with or without heirs. The provision that the land "shall revert back" seems to us to entirely preclude the conclusion that the testator intended that the land should only go to his heirs in case Keo or Gracie died without heirs, before his death. We think the intention is clear that the land is to go to the testator's heirs living at the time of the death of Keo or Gracie without heirs, whenever that occurred.

III. If it should be said that there is such ambiguity in the will as to the estate intended to be devised that we should consider the extrinsic facts, these, we think confirm the view we have expressed as to the intention of the testator. It appears from the agreed statement of facts as follows: The will under consideration was executed January 11, 1891, at a time when the testator was in feeble health, owing to his advanced age, and in anticipation of an early death, though he survived

until July, 1893. He left surviving him as his only next of kin his said six grandchildren and a sister residing in Kentucky. He died seised of the lands described in the will, and had owned and resided thereon for many years. His grandchildren were reared in the same neighborhood, and were well known to him. At the time the will was executed the youngest of the four Hinkle children was about thirteen yet the condition is the same as to both. These facts go far It seems to us that the testator, at his advanced age and feeble condition, could not have contemplated that he might live until Keo or Gracie might have heirs born to them,— surely not as to Gracie, who was then only five years old,— yet the condition is the same as to both. These facts go far to convince us that the words "should die without heirs," in the sixth paragraph, were not intended to mean should die without heirs during the life of the testator. It is urged in argument that the lands described in the devises to Keo and to Gracie are largely more valuable than those devised to the Hinkle grandchildren, and hence it was that the testator imposed the condition expressed in the sixth paragraph on their title. The intention of the testator being clear as to the estate devised, we may not inquire into the equality or justness of his devises. Our conclusion is that under this will plaintiff's ward, Gracie Jordan, and the defendant Keo Jordan took, at the death of the testator, a conditional fee title in the lands devised to them, respectively, subject to be determined upon her dying without heirs of her body.— Reversed.