LOUIS CASLAVKA et al., Appellants, v. WILLIE CASLAVKA et al., Appellees.

**WILLS:** Construction—Limiting or Withdrawing Fee. An absolute devise, in fee, which becomes fully vested on the death of testator, is not limited or withdrawn by a further provision of the will which provides that, if devisee "dies," said devise shall pass to other named persons, when it is quite manifest from the will as a whole that testator was contemplating and providing solely for the possibility that devisee might not outlive him (testator).

*Appeal from Tama District Court.*—JAMES W. WILLETT, Judge.

MAY 9, 1922.

REHEARING DENIED SEPTEMBER 23, 1922.

ACTION in equity, to set aside a decree in partition and to obtain the construction of a will. The facts appear in the opinion.—*Affirmed.*

*Grimm, Wheeler & Elliott,* '*F. C. Duncan,* and *Willard Russell,* for appellants.

*C. E. Walters, Struble & Stiger,* and *H. K. Lockwood,* for appellees.

FAVILLE, J.—Joseph Caslavka was a farmer, owning certain lands located in Tama County. He was twice married. By his first wife he had ten children, and by the second wife, two children. Prior to his marriage to the second wife, the parties entered into an antenuptial contract, fixing, by mutual agreement, the amount the said wife should receive from the estate of the said Joseph, if she survived him. This agreement was made April 16, 1898, shortly before the marriage of the parties. On August 31, 1914, the said Joseph made his last will and testament. He died on the 13th of October, 1914. The will of the said decedent was duly admitted to probate, administration was had, and said estate was fully closed, and the executors discharged. On or about the 8th of December, 1919, certain children of the said Joseph brought an action for the partition of certain real estate belonging to said decedent. The widow and all of the children of the testator were parties to said action, either as plaintiffs or as defendants. The widow appeared as a defendant in said action, and filed an answer, and sought, by a prayer for affirmative relief, to have said real estate partitioned in a different manner than was prayed for in plaintiffs' petition in said action, giving her one fifth thereof. No notice of the filing of said answer was served upon any of the parties to said action, and no issue was joined upon the affirmative allegations of said answer. A decree in partition was entered in said suit,

and the share of said widow was fixed by said decree, as prayed in the answer of said widow. A referee was appointed, and said property was sold by said referee in June, 1920, which sale was duly approved by the court. Subsequently, this action was commenced.

The real gist of the dispute in this case is with regard to the proper construction to be placed on the will of the said Joseph Caslavka. The decree in the original partition suit construed the will as contended for by the widow and the son Willie. By this action, the plaintiffs seek to set aside the decree in partition, as having been entered without due notice, and to obtain a construction of said will as contended for by the appellants, and contrary to the contention of the widow and said Willie. We will take up first the question as to the construction and legal effect of the will of the said decedent.

I. By the terms of his will, the said Joseph Caslavka referred to the antenuptial contract made with his wife, and directed that the same should be carried out. He then gave certain specific bequests in money to each of seven of his children. The will then proceeds as follows:

"Eighth—I give and bequeath to my sons, Peter B. Caslavka, Vincent Caslavka, Albert Caslavka, Willie Caslavka, and Eddie Caslavka, in equal shares, share and share alike, all the rest of the remainder of my estate of which I shall die seized or possessed or in which I shall have at my death any right or interest together with all money and choses in action belonging to me or in which I have any interest.

"Ninth—It is my will that none of the real estate of which I shall die seized or possessed or in which I shall have at my death, any right or interest, shall be sold or disposed of until my youngest child shall arrive at the age of twenty-one (21) years.

"Tenth—Should any of my children die before me, it is my will that the share which should go to him or her, shall go to his or her children, if any survive him, share and share alike. ·

"Eleventh—Should any of my children die leaving no issue surviving, his share shall then go to my children surviving, share and share alike."

The two sons Willie Caslavka and Eddie Caslavka were the

issue of the second marriage. The son Willie became of age on March 3, 1921. The son Eddie died without issue on November 13, 1917, a little more than three years after the death of the testator. Briefly stated, the contention of the appellants is that, under the terms and provisions of the said will, the share of the estate of the testator therein devised to the son Eddie passed equally to the surviving children of the said testator, share and share alike, under Paragraph 11 of the will. On the other hand, it is the contention of the appellees that Eddie became vested with an absolute fee-simple title to the share devised to him; and that, upon the death of the said Eddie, subsequent to the death of the testator, his said share passed to his mother by the laws of descent, he having died intestate. We do not need to cite authorities for the oft-repeated declaration that the will of a testator is to be read as an entirety, and force and effect given to all of its terms and provisions, if possible; and that the intention of the testator, as expressed in the will, is to be gathered from the entire instrument, and such manifest intention is to be effectuated and carried out. These general rules are fundamental. Turning to the will in question, we find that, after making a certain specific bequest, the testator, by the eighth paragraph of his will, made the following provision:

"I give and bequeath to my sons, Peter B. Caslavka, Vincent Caslavka, Albert Caslavka, Willie Caslavka, and Eddie Caslavka, in equal shares, share and share alike, all the rest of the remainder of my estate of which I shall die seized or possessed or in which I shall have at my death any right or interest together with all money and choses in action belonging to me or in which I have any interest."

It is contended that Paragraph 11 is a limitation upon the devise contained in Paragraph 8; and that the estate which the son Eddie took under Paragraph 8 of the will was made determinable by the provisions of Paragraph 11 of the will; and that, upon the death of the said Eddie without issue, subsequent to the death of the testator, his share in said estate passed to all the surviving children of the said testator, share and share alike.

Reading the will as an entirety, to discover the intention of the testator, it is obvious that his desire was that the real

estate should be held intact until his youngest child should arrive at the age of twenty-one years, and that all his property should pass down the direct line of descent. He did not attempt, by this will, to create life estates in the property devised to his several children, with remainder over. Reading the will as an entirety, it is apparent and plain that the intention of the testator was to provide for each of his children in the specific manner set out in said will in Paragraphs 3 to 8, inclusive. He also had a further thought in drawing this will, and that was to provide for the disposition of the property in the event that any of his children should die before he did. With this thought in mind, Paragraphs 10 and 11 of the will were drawn. They must be read together, and considered in the light of all of the provisions of the will, for the purpose of ascertaining the true intent of the testator and, if possible, giving force and effect to each and every provision of the will. The tenth paragraph of the will very clearly provides that, should any of the testator's children die before the testator's death, leaving issue, then and in that case the share given to such child by the will should go to the surviving children, if any, of such child, share and share alike. The eleventh provision of the will is merely the carrying out of the same thought, purpose, and intent on the part of the testator, applying it to the other alternative, to wit: that the predeceased child should leave no surviving issue. In that event, by its terms, the will provides that, if any of testator's children should die (before him), leaving no issue surviving, then the share of such deceased child shall go to the surviving children of the testator, share and share alike. When so construed, the tenth and eleventh provisions of the will are wholly consistent with each other, and also with the other provisions of the will; and the entire instrument throughout is consistent, and expresses clearly the intent of the testator. No paragraph is to be read isolated and alone. It is apparent to us that the intention of the testator, as expressed in Paragraph 11 of the will, was not to place a limitation upon any of the bequests in the preceding paragraphs of the will, in which he gives specific sums of money to his different children. It would be a forced and unreasonable construction of the will to contend that, in giving these specific bequests of definite sums to his

various children, he intended the same to be in the nature of life estates, which should terminate upon the death of each of said beneficiaries. Except in Paragraph 8, the bequests were of specific sums of money. Paragraph 9 was a limitation upon the disposal of the real estate until the youngest child attained the age of twenty-one years. Paragraphs 10 and 11, when construed together, are not limitations upon the previous bequests in the will. They are simply provisions for the disposition of the several bequests in the event that any of the children of the testator should die before he did, and hence not take under the will. As before stated, Paragraph 10 provides that, if any of his children should die before the testator, the share of such child should go to the children of such deceased child, if any survived him. The eleventh paragraph is merely a continuation of the thought expressed in the tenth paragraph, providing for the other alternative, that, if such predeceased child should leave no issue surviving him, his share should then go to the surviving children of the testator. This construction of the will, it may be contended, amounts to incorporating the words "before me" after the word "die" in the eleventh paragraph of the will, making it read:

"Should any of my children die [before me] leaving no issue surviving, his share shall then go to my children surviving, share and share alike."

This is not reforming the will of the testator, nor incorporating into it that which is not there, nor construing it contrary to its express language, nor is it making it mean something that the testator did not intend. This construction is simply taking the will by its four corners and ascertaining therefrom the true purpose and intention of the testator as therein expressed by the language used. We think it is apparent that, by the terms of Paragraph 11, when read in conjunction with the other paragraphs of the will, the testator did not intend to place a limitation or a defeasance upon the bequests provided for in Paragraph 8 of the will, nor upon those in any of the preceding paragraphs. If such is the effect of Paragraph 11, it might well be argued that Paragraphs 8 and 11 are repugnant to each other, and that Paragraph 11 is void. *Canaday v. Baysinger*, 170 Iowa 414; *Elberts v. Elberts*, 159 Iowa 332. We

do not so view it, however, and do not construe Paragraph 11 as being a limitation upon the estate created under Paragraph 8 of the will. We read Paragraph 11 in connection with Paragraph 10 and with all the other paragraphs of the will, to arrive at the true intent of the testator; and summing it up, we find that the intent of the testator was to make these several bequests to his children, and to provide that, if any of his said children were dead at the time of the death of the testator, the share of such child should pass to his (the child's) surviving children, if any; and that, in the event that such predeceased child had left no surviving issue, then the share of such child so deceased should pass to the testator's children that survived the testator, share and share alike. This, we think, is the clear and manifest intention of the testator, as gathered from the entire will. When so construed, it is apparent that the son Eddie, who survived the testator, became vested with his share in the estate of the testator, and that, upon his death, intestate, subsequent to that of the testator, his said share in said estate passed to his mother, the appellee Rosie, who was his sole heir.

II. The appellants seek by this action to vacate and set aside the decree in the original partition suit, to which they were parties, which decree fixed and established the shares of the respective parties in the real estate of said testator in accordance with the will as now construed by us. Appellants seek to vacate the decree in partition in order to obtain a different construction of the will of the testator from the one decreed in the partition suit. The ultimate question between the parties is whether or not the widow Rosie took by descent the share in said real estate, to wit, one fifth, which was given to the son Eddie under the will. In said decree in partition, the widow was adjudged to be entitled to said share. We reach the same conclusion. All of the parties were before the court in said partition proceedings, and the interests of the respective parties in the real estate were fixed and established correctly. No appeal was taken from that decree. A setting aside of the decree in said partition action could avail the appellants nothing whatever, as their shares in the real estate of the testator were correctly determined by said decree. Under such circumstances, we are not disposed

to determine the questions now urged as a basis for vacating said decree. Only a moot question is involved.

The demurrer to appellants' petition was properly sustained, and the decree of the trial court must be, and the same is,—*Affirmed.*

STEVENS, C. J., EVANS and ARTHUR, JJ., concur.