WM. BEBENSEE, Administrator, Appellee, v. FRED BLUMER, Appellant.

No. 42528.

DECEMBER 11, 1934.

White & White and Fletcher, Swift & Fletcher, for appellant.

Smith & More, for appellee.

KINTZINGER, J.—The petition alleges that the decedent, Minnie Kolmorgen, performed services for the defendant, as housekeeper, from February 14, 1916, to December 5, 1927, under an oral agreement for compensation at $2.50 per week. The petition also alleges that said Minnie Kolmorgen, at defendant's request, performed services for him as housekeeper for the same period, and that the reasonable value thereof was $2.50 per week.

In his answer, defendant denies that there ever was any oral agreement to pay the decedent $2.50 per week or any other sum for the services alleged, and denies each and every other allegation of the petition. Defendant admits that Minnie Kolmorgen performed services for him as housekeeper, but denies that there was any agreement that she was to receive $2.50 per week for such services. For a separate defense, he alleges that a full and complete payment and settlement for all services rendered by decedent was made to her by the defendant. Plaintiff, in reply, denies each and every allegation in the answer that is contrary and inconsistent with the petition, and denies that there was ever any settlement made for the alleged services.

The evidence shows, without dispute, that decedent came to this country in 1902, and thereafter was employed as housekeeper for the defendant's father, and continued in such employment until his death in 1916. Prior to that time the defendant was living with his father, but no claim is made for any services rendered prior to 1916. The undisputed evidence shows that Minnie Kolmorgen was over 60 years of age in February, 1916, and was past 71 in December, 1927. The evidence shows that she continued to live in the same house occupied by defendant's father, and continued to per-

form services for the defendant as housekeeper from February, 1916, to December, 1927. She was in poor health much of that time, and because of ill health she left defendant's home in December, 1927. Plaintiff relied both upon an oral contract at a compensation of $2.50 per week and on an implied contract for the reasonable value of her services.

There is not a word of evidence tending to establish an oral agreement to pay her $2.50 per week; but there was evidence tending to show that the reasonable value of her services was from $5 to $8 per week.

The undisputed evidence also shows that in October, 1927, the decedent, on the one hand, and this defendant and his brother, on the other, executed the following written instrument:

"Exhibit I.

"This memorandum of agreement made this October 18th, 1927, between Minnie Kolmorgen, first party, and Fred Blumer and John Blumer, second parties, is to witness.

"Whereas said Minnie Kolmorgen for many years prior to the death of Fredolin Blumer, late of Shelby County, Iowa, was a housekeeper and received from John Blumer, administrator of the estate of said Fredolin Blumer, deceased, full payment and settlement for services for said Fredolin Blumer in his lifetime, and whereas upon the death of said Fredolin Blumer the said Minnie Kolmorgen had no home and no near relative in this country and expressed her desire to continue to live in the home of said Fredolin Blumer and keep house for Fred Blumer, one of the second parties hereto, and to make her home with him and whereas upon the death of said Fredolin Blumer the said John Blumer and a brother became the owners of the residence property in Shelby, Iowa, where the first party had been living and whereas said John Blumer and Fred Blumer are now the owners thereof, and whereas upon the death of said Fredolin Blumer a verbal agreement was made and entered into between first party and second parties that first party should continue to live in said residence property and make the same her home and to keep house for Fred Blumer, one of the second parties hereto, and that there should be no charge or compensation to the first party for the use and occupation of said residence property or for her maintenance and support and no charge or compensation from second parties to first party for doing the housework in connection with the home.

·"Now, therefore, for the purpose of reducing said verbal agreement to writing it is now mutually understood and agreed that the said first party has been making her home in said residence property and received maintenance and support therein since the death of Fredolin Blumer and is at liberty to continue to make the same her home as long as she may desire without rent or compensation for the use thereof, and that said first party has been doing the housework in connection with the said home since the death of Fredolin Blumer and expects to continue to keep house for said Fred Blumer and that she does not expect and is not entitled to any compensation for such house work in the past nor in the future while she may continue to live in said residence property, the same being furnished by her free of charge in return for the home so furnished to her.

"And the said first party hereby acknowledges full settlement and satisfaction for any and all claims she may have or claim to have for past services and the second parties hereby acknowledge full settlement and satisfaction for any claim they may have or claim to have for house rent, maintenance and support. And it is mutually agreed that said arrangement shall continue in the future as in the past, first party contributing her services as housekeeper in return and compensation for home, maintenance and support.

"[Signed]   Minnie Kolmorgen,
"First Party.
"[Signed]   John Blumer,
"Fred Blumer,
"Second Parties."

The undisputed evidence shows that this agreement was signed and executed by Minnie Kolmorgen on or about October 18, 1927, and delivered to defendant and his brother. The evidence shows that Minnie Kolmorgen was of German descent, and could talk German better than English; it also shows that she could understand the English language; that the instrument was read over to her in English before she signed it; that it was translated to her in German by Margaret Blumer; that she fully understood it, signed it, and said it was all right.

There was some testimony that about two weeks after she left defendant's home, and while living with this administrator, the defendant called on her to inquire if she was able to return. In reply she said that she was not, but would like to have some money. She said she thought some money was coming to her. The evidence shows

that before that time she had about $1,400, but it then was in a closed bank, and not available. The administrator testified he knew nothing about the above contract of settlement until shortly before Miss Kolmorgen died, when she told him she had signed some paper, but did not know what she signed.

At the close of all the evidence, defendant filed a motion for a directed verdict because (1) the uncontradicted evidence shows there had been a full settlement shown by the writing, and (2) that there was no competent evidence to sustain an oral or implied contract to pay $2.50 a week or any other amount for services rendered. This motion was overruled. After the verdict, defendant filed a motion for a new trial upon substantially the same grounds, and this was also overruled.

I. It is contended that the court erred in giving instruction No. 5 for several reasons, one of which is that the court therein said:

"It will be for you to determine whether the services alleged to have been rendered by the said Minnie Kolmorgen were in fact rendered for the defendant herein, *and whether or not there was a contract and agreement that the said defendant was to pay for said services to the said Minnie Kolmorgen the sum of $2.50 per week.*" (Italics ours.)

This instruction submitted the question of defendant's liability upon an express oral contract to pay $2.50 per week for services performed. A careful examination of the entire record fails to disclose any evidence whatever tending to prove any such agreement. The giving of the instruction is therefore clearly erroneous. Although other complaints are made to the instruction, a consideration thereof is unnecessary.

II. It is also contended that the court erred in overruling the motion for a directed verdict and the motion for a new trial. In a separate defense to his answer, the defendant alleges "that a full and complete settlement, payment and satisfaction for all services rendered by said Minnie Kolmorgen was made by defendant with her and that there is now nothing due therefore." To sustain this allegation of his answer, the defendant, without objection on the part of the plaintiff, introduced in evidence what is known as Defendant's Exhibit 1, hereinabove set out. This instrument is both an acknowledgment and admission that the parties entered into an

oral agreement under which decedent was to perform certain housework for the defendant in consideration for her board and keep. It is the only evidence in the entire record tending to establish the nature of the agreement for services entered into between decedent and the defendant. It is also in the nature of a full settlement and satisfaction for any and all claims that either party might have against the other, and is also an agreement for the continuance of the same arrangement in the future. The plaintiff did not, by pleading or otherwise, attempt to avoid the effect of said agreement. It is suggested in appellee's argument that the decedent was old and in poor health at the time the agreement was executed, and that it was procured by fraud. No such allegations, however, were in any manner pleaded or proven. It is the settled law of this state that matters alleged in the answer as a separate defense cannot be set aside on the ground of fraud or mental incapacity, unless such facts are both pleaded and proven. Code, section 11157; Hay v. Frazier, 49 Iowa 454; Pitstick v. Osterman, 107 Iowa 189, 77 N. W. 845; Black v. Miller, 158 Iowa 293, loc. cit. 304, 138 N. W. 535; Ford v. C., R. I. & P. R. Co., 106 Iowa 85, loc. cit. 93, 75 N. W. 650; First Nat. Bank of Marshalltown v. Wright, 84 Iowa 728, loc. cit. 732, 48 N. W. 91, 50 N. W. 23.

The written instrument established, without dispute, the fact that there was no oral agreement to pay decedent $2.50 a week; it also fully rebuts any claim for services on a quantum meruit. As no facts were pleaded or proven tending in any manner to avoid the effect of this written instrument, it must be given full effect.

Plaintiff's reply does allege that the agreement was void for want of consideration. There is no evidence, however, in the record tending to show a want or failure of consideration. On the contrary, the instrument shows, without dispute, that Minnie Kolmorgen and the defendant entered into an oral agreement for the performance of services, in consideration for which she was to receive her home and sustenance as full compensation therefor. The absence of any evidence tending to show that the decedent ever made any claim for compensation during the long period of 11 years between 1916 and 1927 is a strong circumstance tending to show there was no expectation on her part to receive any other compensation than her room and board. It is clear that under the entire record in this case the court erred in failing to sustain defendant's motion for a directed verdict and also his motion for a new trial.

For the reasons hereinabove set out, the judgment of the lower court must be, and is hereby, reversed.

MITCHELL, C. J., and STEVENS, ALBERT, ANDERSON, DONEGAN, and EVANS, JJ., concur.