IN RE ESTATE OF GEORGE MCCULLOCH.
MILAN E. MCCULLOCH, executor and devisee, appellee, v. MRS.
HOWARD CONRAD et al., objectors-appellants.

No. 47921.

(Reported in 52 N.W.2d 67)

450

MARCH 4, 1952.

Arlo W. Palmer, of Oskaloosa, Ralph L. Bailey, of Cleveland, Ohio, Badger, Pyers & Miller, of Millersburg, Ohio, and T. L. Withers, of Reno, Nevada, for various appellants.

Larson & Long, of Leon, and Lundy, Butler & Lundy, of Eldora, for appellee.

BLISS, J.—On October 1, 1929, George McCulloch, born in 1848, and a resident of Humeston in Wayne County, Iowa, since 1880 or earlier, executed his last will and testament. Neither the execution of the will nor his competency or volition is in any way challenged. Omitting the preliminary paragraph, the material parts of the will are as follows:

"I give, devise and bequeath all of my property, real, personal and mixed, which I may own at the time of my death, to my son, Milan Ellsworth McCulloch, except as follows:

"To Albert Painter, I direct that thirty dollars be paid monthly during his lifetime. Should my son die without heirs, the said Albert Painter is to receive the equal of one hundred sixty acres of land, if possessed, outside of Richman township.

"Should my son die without heirs (lineal descendants) the following described land is to be divided equally between the

following heirs, if living, and if deceased to their heirs: Hugh McCulloch, David McCulloch, Isaac McCulloch, Mary Ann Sherlock, Alfred D. McCulloch, Joseph C. McCulloch: SW¼ and SE¼ NW¼ Sec. 20 consisting of two hundred acres E½ and fractional E½ NW¼ Sec. 19 consisting of 397 $\frac{265}{1000}$ acres—— NW¼ Sec. 30 consisting of 160 acres less railroad, all in Richman township, Wayne County, Iowa. Should my son die without heirs, To each of the following relatives or their heirs, one hundred dollars each, James McCulloch, Ella N. Schlegal, A. P. McCulloch.

"I hereby nominate my son Milan to be the executor of this my last will and testament, without bond. (Signed) GEORGE McCULLOCH."

The deceased duly executed the following codicil:

"No. 1—Codicil Feb. 11/35

"Owing to changes in financial conditions Albert Painter is not to receive thirty dollars monthly as specified in original will.

"Should my son Milan E. McCulloch die without heirs (lineal descendants) The following described lands are to be divided equally between the following heirs if living and if deceased to their heirs (lineal)—Hugh McCulloch, David McCulloch, Isaac McCulloch, Alfred D. McCulloch, Joseph C. McCulloch.

"Living heirs of Martha Ann Sherlock (mistake in original will Mary instead of Martha) her son Albert Sherlock and A. E. Painter they shall have jointly one hundred and twenty acres outside of Richman twp. Marine Reihnold shall receive fifty dollars and if deceased it shall go back into the general fund. The above named McCulloch brothers or their heirs (lineal descendants) if deceased shall receive the following described land in Richman Twp. Wayne County, Iowa——SW¼ and SE¼ of the NW¼ Sec. 20 consisting of two hundred acres E½ of Sec. 19 three hundred and twenty acres and Seventy-seven $\frac{265}{1000}$ acres on the E. side of the NW¼ of Sec. 19—NE¼ of Sec. 30 consisting of one hundred and sixty acres.

"But no land or bonds (not due) shall be sold and deeded by my son Milan E. McCulloch unless indorsed by written consent of Harry I. McCulloch.

"James McCulloch
Ella Schlegal.
A. P. McCulloch

"The above three named now deceased or their lineal descendants shall only receive fifty dollars instead of one hundred dollars as specified in original will.

"If any of the heirs (lineal descent) can not be found in one year from time of Milan E. McCulloch's death their specified shares shall be divided among the known heirs.

"Codicil Feb. 11/35

(Signed) "George McCulloch."

George McCulloch died a resident of Humeston, Wayne County, Iowa, April 12, 1936, leaving said will and codicil as his last testament. The instruments were probated in the district court of said county on May 14, 1936, as the last will and testament of the deceased, and at the same time Milan E. McCulloch qualified as executor of the estate and thereafter administered it.

On July 3, 1950, he filed his "Final Report and Application for Confirmation of Title" with the clerk of the district court. In it he noted his doings as such officer of the court: the payment of all claims, court costs, including the service fees of his official attorney, the Honorable H. K. Evans, formerly judge of the Third Judicial District of Iowa, and taxes of all kinds; the legal description, and acreage, or dimensions, of each specific tract belonging to the estate. It recited that decedent left no spouse surviving, and no heir but his son, Milan E. McCulloch; the names of each devisee and legatee, and whether they were deceased or living, and the addresses of the latter; but two of these, Marine Reihnold and Albert Sherlock, in addition to the executor, were living; the names of all the heirs of the body of the deceased devisees and legatees, and whether deceased or living, and the addresses of the latter.

Paragraph X of the report is as follows: "This executor as such and for himself as an individual shows that as son and as heir and as devisee of the decedent, George McCulloch, as well as by all other rights of which he is possessed is the absolute owner of all properties of decedent, real and personal, and is entitled to hold all such as his own, and that all such properties have been distributed to him and received by him and are now held by him."

The executor prayed that his final report be approved, the estate closed and he be discharged. The second paragraph of his prayer was: "That upon final hearing had his distribution of properties be approved; and that absolute title to all of the property of the decedent herein, real, personal and mixed, be confirmed in him as an individual."

Three sets of objections to the final report and application for confirmation of title, together with three petitions for declaratory judgment, were filed by three sets of heirs of, or claimants under, deceased devisees and legatees of the will in controversy. Appellants designate them as the "McCulloch Group", who claim the 757-acre tract, the "Sherlock-Painter Group", interested in the 120 acres outside of Richman Township, and the "Painter Group", interested in the 160 acres outside of Richman Township. The separation of these groups is not important as their claims are all based on similar grounds, the character of relief asked is the same and they are all designated as "objectors." The groups were consolidated in the hearing and decision below and they will be treated together here.

These objections particularly attack Paragraph X of the final report and the second paragraph of its prayer (both of which we have set out in full) in which Milan E. McCulloch, as an individual and devisee, claims all of the estate as his own, and asks that his title and ownership be confirmed. The objectors allege that, with respect to the specific tract in which each group claims an interest under the will and codicil, the testator did not intend that Milan E. McCulloch should have an absolute fee simple title, but that in the event of his death at any time without lineal descendants the said tracts of real estate should pass to other devisees named in the will and codicil, if living, or to their lineal descendants, if deceased. The objectors admit that they are some of the persons listed in Paragraph IX of the executor's report as heirs of deceased devisees named in the will and codicil, and that their names and relationship are correctly stated.

There is no controversy over the facts. Many facts were agreed to by written stipulation of the parties, some of which we have stated. In support of his report the executor introduced this stipulation and then rested, without offering any testimonial

evidence. The objectors then used Milan E. McCulloch, the executor, and Mr. Bert McCulloch, as witnesses, and then rested. From the stipulation and testimony these facts are shown. The father of the testator came to Wayne County in 1858 and located and acquired about 800 acres of land, of which the 757-acre tract, specifically described in both the original will and the codicil, is a part. There were twelve sons and daughters in the family of this pioneer. On the death of his father George McCulloch inherited his share of the 800 acres and bought the shares of the other heirs and distributees. George McCulloch first went to Rush Medical College in Chicago, and was in attendance there in 1871 at the time of the Chicago fire. His class was transferred to the University of Michigan, at Ann Arbor, and he received his degree of M.D. there. He practiced his profession at Hastings, Nebraska, and at Brooklyn, before he came to Humeston in the seventies, where he thereafter followed his profession until his death in 1936 at the age of eighty-seven years. He prospered and at the time of his death owned twenty parcels of real estate—thirteen tracts of farm land in Wayne, Lucas and Decatur Counties, containing approximately 2063 acres—and seven business and residence properties in Humeston. Albert E. Painter, mentioned as a devisee in the will, was a son of Martha Ann Sherlock, a sister of George McCulloch. His parents died when he was young and he was reared in the home of the parents of George. He died April 20, 1942, leaving his wife Maude W. Painter of Reno, Nevada, surviving, and his sole and only lineal descendant, Janifield Painter Percissi, daughter of his deceased son.

Milan E. McCulloch was born in January 1883. He graduated from the Humeston High School and attended Drake University and the University of Iowa each for one year. He graduated from the Iowa State College at Ames and received the degree of Bachelor of Animal Husbandry. He took postgraduate work at the University of Chicago and received the degree of Doctor of Jurisprudence. He never practiced law. For a period of time he was employed by the state of Iowa in farm management work. Later he was a scientific examiner for the United States Civil Service Commission. He is a bachelor and has no lineal descendants. It is stipulated that both the will and codicil

were handwritten. The record does not show whose hand did the writing.

At the opening of the trial the following colloquy was had:

"The Court: As I understand this matter, there is no controversy between the executor and his claims and those of the claimants to these various tracts of land you have mentioned, except to construe what is in the will. In other words, you are agreeing what is in the will is the will.

"Mr. Lundy: The will is admitted to probate.

"The Court: You are not disputing anything that is in the will itself. You are wanting it construed as it is.

"Mr. Palmer: I think that is right."

There are other facts about which there is no dispute. It is conceded that the only real estate involved in this controversy is the 757-acre tract—sometimes spoken of as 737 acres—and the two unspecified 160-acre and 120-acre tracts "outside of Richman Township." The remainder of the 2063 acres, the residence and business properties in Humeston and all of the personal property pass absolutely under the will to Milan E. McCulloch.

Objectors state the issues in the district court and in this court as follows: 1. Whether the devises over, following the general devise of all the property in the first part of the will to the son, are invalid for repugnancy. 2. Whether the reaffirmation of the devises over in the codicil eliminated the applicability of the doctrine of repugnancy. 3. Whether the paragraph in the codicil stating "But no land or bonds (not due) shall be sold or deeded by my son Milan E. McCulloch unless indorsed by written consent of Harry I. McCulloch" indicated the intent of the testator that his son should be the absolute fee simple owner of all the real estate of which the testator died seized. 4. Whether the testator intended the devise over in the event his son should "die without heirs (lineal descendants)" to prevail only in the event his son predeceased him.

I. We will discuss them in their order. The repetition in our opinions that the cardinal and governing rule in the construction or interpretation of a testamentary disposition is the intention of the testator has been so frequent and long continued that it has become trite and monotonous. But nevertheless, as

stated by Chief Justice Weaver in Hiller v. Herrick, 189 Iowa 668, 670, 671, 179 N.W. 113, 114, the rule "unfortunately is sometimes neglected, in the search for precedents to sustain a desired conclusion. In no other class of cases is mere precedent as to the use or meaning of human language of so little real value. No two men make their wills under precisely similar circumstances, and words used to express a certain intent in one case may be employed with a very different intent in another. Precedents in such cases may be very properly employed as aids, but they should not lead either court or counsel to insist on a construction of a will which, in view of the situation disclosed in the particular case under inquiry, it is clear was not in the mind of the testator." This court has expressed the same thought several times. See In re Estate of Hellman, 221 Iowa 552, 555, 266 N.W. 36; Wright v. Copeland, 241 Iowa 447, 455, 41 N.W.2d 102; Odens v. Veen, 234 Iowa 1029, 1032, 14 N.W.2d 705; In re Estate of Wright, 241 Iowa 349, 357, 41 N.W.2d 80; Wilhelm v. Calder, 102 Iowa 342, 346, 347, 71 N.W. 214; In re Estate of Flannery, 221 Iowa 265, 270, 264 N.W. 68.

In ascertaining the intent of the testator certain well-established rules have been followed by the courts of Iowa and of all the states. Among them is the rule that the testator's intentions must not be ascertained from a single part or paragraph of the will but the instrument must be read and considered as a whole, each part in connection with every other part and with the entire will, and each part given meaning and operation if possible. It must be assumed that each part of the will was incorporated by the testator with some definite purpose and it should not be discarded or disregarded without sound reasons. The intention of the testator must be gathered from the words of the will itself, if their meaning as a whole is clear, unambiguous and unequivocal. The question is not what the testator may have meant, but what did he say, what is the meaning of the words he actually used in the will? There is then no reason for construction of the will or for the use of arbitrary and technical rules or canons of construction in ascertaining the testator's intention. All such rules and canons serve no purpose when the testamentary intention fairly and clearly appears from the testator's words in the will itself. See Hiller v. Herrick, supra,

458

189 Iowa 668, 672, 673; In re Estate of Organ, 240 Iowa 797, 800, 802, 38 N.W.2d 100; Wright v. Copeland, supra, 241 Iowa 447, 452; Lytle v. Guilliams, 241 Iowa 523, 525, 526, 41 N.W.2d 668, 16 A. L. R.2d 1378; In re Estate of Edwards, 231 Iowa 71, 77, 78, 300 N.W. 673; Richards v. Richards, 155 Iowa 394, 396, 136 N.W. 132; Elberts v. Elberts, 159 Iowa 332, 334, 141 N.W. 57; In re Estate of Dodge, 207 Iowa 374, 379, 380, 223 N.W. 106; Canaday v. Baysinger, 170 Iowa 414, 417–421, 152 N.W. 562; Jordan v. Woodin, 93 Iowa 453, 460, 464, 61 N.W. 948; Bellamy v. Bellamy, 184 Iowa 1193, 1198, 1199, 169 N.W. 621; Podaril v. Clark, 118 Iowa 264, 268, 91 N.W. 1091; Wheeler v. Long, 128 Iowa 643, 645–647, 105 N.W. 161; Jensen v. Nelson, 236 Iowa 569, 576, 19 N.W.2d 596; In re Estate of Thomas, 220 Iowa 50, 54, 261 N.W. 622; In re Estate of Johnson, 220 Iowa 424, 425, 426, 262 N.W. 811; In re Estate of Flannery, supra, 221 Iowa 265, 271, 272; In re Estate of Syverson, 239 Iowa 800, 804–806, 32 N.W.2d 799; In re Estate of Van Wechel, 241 Iowa 513, 518, 519, 41 N.W.2d 694; Henkel v. Auchstetter, 240 Iowa 1367, 1373, 1374, 39 N.W.2d 650.

 The form of the will has no bearing on the intentions of the maker. They are drawn many times by persons having little if any knowledge of the applicable law or of legal terms, and a skilled draughtsman may use terms contrary to exact meaning. The arrangement of the will or the order in which its clauses or paragraphs appear is not controlling and may be of little significance, since the will must be read and construed as a whole. In re Estate of Glandon, 219 Iowa 1094, 1097, 260 N.W. 12; Hiller v. Herrick, supra, 189 Iowa 668, 671; Mapes v. Rose, 187 Iowa 289, 292, 174 N.W. 235.

██ ██ The purpose of a codicil to a will is ordinarily to effect some change in the will as drawn. Geisinger v. Geisinger, 241 Iowa 283, 292, 41 N.W.2d 86. But when the codicil is executed it becomes a part of the original will, and together they make one testamentary disposition. The codicil is welded into the will and becomes an integral part of it and in determining the intent of the testator the will and the codicil are to be read together as one instrument; unless there is an irreconcilable conflict or discrepancy between them, the codicil is no more the last expression of the testator's intent than if it had been written

as a part of the will. If there is such a conflict the codicil will govern. "Another way of stating the rule in this regard is that the language of a codicil will be permitted to disturb the provisions of the will only to the extent necessary to give effect to the codicil; * * * the codicil supplants the will only to the extent of those provisions of the will that are inconsistent with it." Annotation 51 A. L. R. 695, 697, 698. See Bennett v. Primer, 191 Iowa 1233, 1238, 184 N.W. 392; In re Estate of Thomas, supra, 220 Iowa 50, 54; In re Estate of Flannery, supra, 221 Iowa 265, 271, 272; Blackford v. Anderson, 226 Iowa 1138, 1151, 1152, 286 N.W. 735; Hoover v. Hoover, 238 Iowa 88, 92, 26 N.W.2d 98.

██ ██ II. Is there such repugnancy between the general devise to Milan E. McCulloch in the first clause of the will and the subsequent limitations over or executory devises to those designated in the will and codicil in the event Milan dies without lineal heirs or descendants? The objectors contend there is not and that all devises stand without conflict. On the other hand, the son, Milan, as devisee under and as executor of the will, insists that the subsequent devises are repugnant to, and inconsistent with the devise to, him and are therefore void. Similar controversies have been before this court many times and in years past able members of the court have disagreed vigorously, not so much over the rule relied upon by appellee, but over its application in particular cases. The court has many times held that a testator cannot make an absolute devise or bequest in one part of his will and in a subsequent clause make a different disposition repugnant to and inconsistent with the first—the reason being that when the gift to the first taker is absolute there is nothing left of which disposition can be made. The litigated and determinative issue in many of the appeals has been whether or not the first devise was an absolute one, or without qualification or exception. If the answer is in the negative then there may be no repugnance or inconsistence, and the two devises can stand together.

The appellee—we will refer to him as devisee and executor in the singular—states his brief points in Division I as follows:

"First: When an estate or interest in lands is devised, or

personalty is bequeathed, in clear and absolute language, without words of limitation, the devise or bequest cannot be defeated or limited by a subsequent doubtful provision inferentially raising a limitation upon the prior devise or bequest.

"Second: When there is an absolute or unlimited devise or bequest of property, a subsequent clause expressing a wish, desire or direction for its disposition, after the death of the devisee or legatee, will not defeat the devise or bequest, or limit the interest in the property."

It is our conclusion that neither point is applicable because neither is warranted nor sustained by the language of either devise, nor by the facts in the record. The first devise is not absolute nor without limitation or exception, and the subsequent devise is not doubtful, and it directly, and not inferentially, raises a limitation upon the first devise and does it by specific positive direction and not by the expression of any precatory, suggested or recommendatory wish or desire.

Let us look at the devise to the son. While it does not specify the estate in the real estate devised as to whether it is absolute, or in fee simple, or to his heirs and assigns forever, if it ended with a period at the end of the word "McCulloch", standing thus alone, without subsequent qualification in the will, it would be sufficient to pass a fee simple title to the son to all of the property, real and personal, which the testator owned at his death. But that is not the situation. There is not a period immediately following the last name of the son, but there is a comma, followed directly by the words "except as follows: * * *. Should my son die without heirs, the said Albert Painter is to receive the equal of one hundred sixty acres of land * * *." etc. Going to the codicil is this devise: "Should my son Milan E. McCulloch die without heirs (lineal descendants) The following described lands are to be divided equally between the following heirs if living and if deceased to their heirs (lineal)—Hugh McCulloch [et al.] * * *. Living heirs of Martha Ann Sherlock * * * her son Albert Sherlock and A. E. Painter they shall have jointly one hundred and twenty acres outside of Richman twp. * * *. The above named McCulloch brothers or their heirs (lineal

descendants) if deceased shall receive the following described land" (describing the 757 acres).

The language of the will and codicil clearly and definitely establishes that it was the intention of the testator that his son, Milan E. McCulloch, was to take under the will and codicil, not an absolute or a fee simple title to the 757-acre tract specifically described in the will and codicil, nor in the 160 acres and the 120 acres outside of Richman Township, but a conditional or defeasible fee in said lands, of which he would be divested, and a fee simple title vested in others as provided in the will if he should die without heirs.

No canon of testamentary construction has any application with respect to the decedent's last will and codicil except the cardinal and primary rule that the intention of the testator as it appears from the whole testament, as above-stated, must govern.

Appellee has cited in support of his two brief points the cases following. We have no disagreement with the result reached in any of them but one, to which we will refer later. Nor will we take the time or space to analyze them. We have carefully read them, and in each of them the estate devised to the first taker was an absolute fee simple and the subsequent devises were either precatory or repugnant. These cases are Williams v. Allison, 33 Iowa 278; Rona v. Meier, 47 Iowa 607, 29 Am. Rep. 493; Benkert v. Jacoby, 36 Iowa 273; Alden v. Johnson, 63 Iowa 124, 18 N.W. 696; In re Will of Burbank, 69 Iowa 378, 28 N.W. 648; Hambel v. Hambel, 109 Iowa 459, 80 N.W. 528; In re Will of Barrett, 111 Iowa 570, 82 N.W. 998; Meyer v. Weiler, 121 Iowa 51, 95 N.W. 254; Channell v. Aldinger, 121 Iowa 297, 96 N.W. 781; Talbot v. Snodgrass, 124 Iowa 681, 100 N.W. 500; Tarbell v. Smith, 125 Iowa 388, 101 N.W. 118; Luckey v. McCray, 125 Iowa 691, 101 N.W. 516; Reichauer v. Born, 151 Iowa 456, 131 N.W. 705; Bradford v. Martin, 199 Iowa 250, 201 N.W. 574; Todd v. Stewart, 199 Iowa 821, 202 N.W. 844; In re Final Report of Campbell, 209 Iowa 954, 229 N.W. 247; Phillips v. Phillips, 217 Iowa 374, 251 N.W. 511; Baker v. Elder, 223 Iowa 395, 272 N.W. 153. In Bills v. Bills, 80 Iowa 269, 45 N.W. 748, 8 L. R. A. 696, 20 Am. St. Rep. 418, cited by appellee, we think the first taker did not receive an absolute or fee simple title. We decline to approve it, though it would not entitle the appellee to an affirmance if we

approved it. In the case of In re Estate of Johnson, 238 Iowa 1221, 1224, 1225, 30 N.W.2d 164, 166, written by the revered and lamented Justice Oscar Hale, the court, referring to the Bills case, said:

"It held to the old rule that a devise or bequest cannot be defeated or limited by a subsequent doubtful provision inferentially raising a limitation upon the prior devise or bequest. This case, however, was questioned in the case of Iimas v. Neidt, 101 Iowa 348, 70 N.W. 203, wherein the doctrine of Bills v. Bills, supra, was modified and a subsequent limitation held to be valid. There was a dissenting opinion. A concurring opinion therein says that the effect of our adherence to the rule indicated in the dissenting opinion as controlling has in particular cases operated to defeat plain testamentary intentions."

It was the Bills case that the trial court relied upon and quoted from in its findings and conclusions of law.

In Frazier v. Wood, 219 Iowa 36, 44, 255 N.W. 647, 652, 257 N.W. 768, after citing many of the cases which we have set out above, as cited by the appellee, the opinion states: "Likewise we have announced a rule that, where a bequest in one part of a will is followed by a limitation in another, the rule hereinabove referred to will not apply unless the first provision is in terms made absolute." (Citing In re Guardianship of McCauley, 213 Iowa 262, 235 N.W. 738; Canaday v. Baysinger, 170 Iowa 414, 152 N.W. 562; Hiller v. Herrick, 189 Iowa 668, 179 N.W. 113; Boekemier v. Boekemier, 157 Iowa 372, 138 N.W. 493.) Many other like cases could be cited, including Guilford v. Gardner, 180 Iowa 1210, 162 N.W. 261, In re Estate of Clifton, 207 Iowa 71, 218 N.W. 926, and Jordan v. Hinkle, 111 Iowa 43, 82 N.W. 426.

In the case of In re Estate of Organ, supra, 240 Iowa 797, 802, what Justice Oliver, speaking for the court, said is apropos with respect to the three words "except as follows" following, the general devise to the appellee herein. It is there said: "The sentence in Item IV, in which the residue is devised, contains the statement: 'subject, however, to the interest of my wife * * * as provided in Item V * * * and to the custody and control of said property by a trustee * * * as provided in said Item.' This specifically subordinates the devise to Item V. *Hence the pro-*

*visions of Item V are a controlling part of the devise and obviously could not be repugnant to it."* (Italics ours.)·

In several opinions of the type relied upon by the appellee herein, and just as he has done, the term "precatory" had been applied to words having no such meaning. In Geisinger v. Geisinger, supra, 241 Iowa 283, 290, 41 N.W.2d 86, again Justice Oliver speaking, the court disapproved of such practice. In the will in the case now before us there is no precatory language. The devises limiting the general devise to the son by devises over to others are not precatory suggestions to the son, but they are positive directions of the testator in the disposition of his property, and such disposition was not within the power, discretion or choice of the son. If the condition respecting death without heirs is disregarded, the devises in this will—involving over 2000 acres of farm land—in character, principle and effect are the same as if the testator was seized of but a quarter section of land, and devised it thus: "I give, devise and bequeath to my son Milan the southwest quarter of section six, etc., except as follows: I give, devise and bequeath the northeast forty acres of said quarter section to Albert Painter." Such a disposition could not reasonably be said to grant or transfer the northeast forty acres of the quarter section to Milan, and the language of the will would certainly indicate that the testator had no such intention.

III. Was the intention of the testator as evidenced by the will reaffirmed by the codicil? Except for some comparatively minor changes, the limitations of the general devise to the son and the conditional devises over to other heirs or blood relatives of the testator were the same in both the will and the codicil. The latter was executed over five years after the execution of the will and clearly shows the definite and fixed intention of the testator that the estate which the son received in the land in controversy was not absolute and in fee simple, but was a qualified, conditional and defeasible fee. The codicil evidenced a confirmance and a reaffirmance of the intention expressed in the will, that the devise to the son was not absolute.

IV. Did the statement in the codicil, viz., "But no land or bonds (not due) shall be sold and deeded by my son Milan E. McCulloch unless indorsed by written consent of Harry I. McCulloch", clearly indicate the intention of the testator in the will

to devise all his property, real and personal, to his son, without limitation? The latter was a nephew of the testator living at New Sharon, Iowa, according to the stipulation. Apparently the testator had confidence in the judgment of this nephew in business and real-estate matters. He wished Milan to have his advice and to obtain his consent in any disposals of land. There were over 1000 acres of farm land and all of the town real estate that the son owned absolutely in fee simple title under the provisions of the will. He could convey such title. He received it on the death of his father. The said direction or recommendation, or whatever it may be designated, in the codicil was and is not legally binding on the son. Apparently he has respected his father's wishes in the matter. But what we have said is also true of the land involved in this litigation, to which the son holds but a qualified, conditional and defeasible title. He nevertheless has the same unrestricted right to sell the latter land as he does to sell the land to which he has absolute title. With respect to some laws, statutes and ordinances which a person may have violated, he may not avoid the consequences thereof by saying he did not know of such legal restrictions or prohibitions. There is a sound and essential presumption that he knew the law whether he actually did or not.

By statute and by the decisions of this court one may sell and convey any future interest in land whether it be contingent, conditional or defeasible. Of course, he conveys no other or different estate than he has, and the purchaser, grantee or donee takes it subject to all these conditions. But, nevertheless, such estates are alienable and the testator may have known it or have had legal advice to that effect. It is our conclusion that the statement in the codicil was no evidence of any thought that the testator had devised the land in controversy absolutely to his son, or that he had intended to do so. For authorities on this point see Henkel v. Auchstetter, supra, 240 Iowa 1367, 1374–1377, and Guilford v. Gardner, 180 Iowa 1210, 162 N.W. 261, and Division V hereof.

V. The question involved in the last proposition on which the appellee relies for affirmance may be stated thus: Do the words "Should my son die without heirs (lineal descendants)" have reference solely to the death of the son in the lifetime of the

testator, or do they mean, and were they intended by the testator to mean, the death of the son without such heirs at any time either before or after the testator's death? The trial court held that the words meant death of the son at any time without heirs by lineal descent. We agree with this finding of the court below.

In Guilford v. Gardner, supra, 180 Iowa 1210, 1213, the facts and conditions as stated therein are much like those in the case at bar. The testator-father devised and bequeathed real and personal property to his son, but on the conditional proviso " 'that if he should die without issue, living, then the portion of my estate devised and bequeathed to him shall revert and go to my beloved wife * * *.' " The son married and outlived his father, but later died without issue. His surviving spouse contended that her husband took absolute title to the property devised and bequeathed to him. It was the claim of the son's mother, the widow of the testator, that since the condition of title in the son failed, the entire property passed to her and that there was no property in which son's widow could have a distributive share. The trial court sustained the contention of testator's widow, and that decision was affirmed by this court in an able opinion by Justice Weaver. The opinion states on page 1219: "* * * while the initial sentence or clause of the third paragraph [the devise to the son] of the will is framed in general terms, which, standing alone, divorced from the modifying terms which follow in the same connection, would confessedly be sufficient to vest in the devisee an absolute fee, yet attached thereto, as part and parcel of the same paragraph, is a clear and unequivocal condition that the right and title so devised will become absolute only on the death of the devisee leaving living issue, and that upon failure of such condition the entire property shall vest in the testator's widow." (On page 1220): "A devise conditioned for a reversion or change of direction upon the death of the devisee without living issue is not, as counsel for appellant seem to think, a devise of a mere life estate. Such a devise vests the beneficiary with a fee, conditional, it is true, but none the less a fee, and carries with it all the rights of possession and control which pertain to full ownership, subject, of course, to the possibility of reverter on failure of the condition." (On page 1221): "The reference to the son's death without issue is accompanied by no words limiting

its meaning to death in the lifetime of the testator, nor by other words by which such limitation can be fairly implied, and without such words or fair implication of such meaning, the devise must be given effect accordingly. There is nothing in any other paragraph of the will nor in the instrument as a whole to give rise to any ambiguity, and the court is not authorized to override any of its provisions by construction." (On page 1222) : "So, too, the holder of a conditional fee may sell and convey such fee, vesting his purchaser with all the attributes of ownership, subject only, as we have already said, to the possibility of reverter or diversion of the title upon failure of the condition attached thereto. We discover nothing in the will of Dr. Gardner which seems intended to vest the son with any other or greater power or authority than such as the law attaches to the ownership of a conditional or defeasible fee." (On page 1224) : "To sustain the position taken by counsel, the court must dismember the testator's statement of his intent and give effect to one clause or phrase thereof and deny any force or effect to the express qualification or condition attached to such devise. * * * but where a devise is made subject to a clearly expressed condition, it is not within the province of the court to sever the condition from the gift and declare absolute and unlimited the title which the testator has made limited and conditional."

The last part of the quotation set out above, the court in In re Estate of Pottorff, 216 Iowa 1370, 1374, 250 N.W. 463, 465, containing contentions similar to those made by appellee herein, was approved thus : "In other words, the appellant asks that the court give effect to only a part of the will of the testator and ignore the balance, which is an express contingency or condition attached to the first portion of the will. The appellant cites no cases to support any such position." For further approval see Alden v. Meling, 185 Iowa 394, 397, 170 N.W. 757.

In In re Estate of Clifton, 207 Iowa 71, 81, 218 N.W. 926, 931, the devise in trust to the testator's son, Clarence, was conditioned that if he died without heirs the remainder of the devise was to go to an "old ladies' home." He died after the testator leaving no heirs. This court held that the provision contemplated a death either before or after the death of the testator. The court said through Justice Morling : "The fee given to Clarence was

limited, conditional, determinable,—a base or qualified fee (ownership). The event on which it was conditioned has occurred. The substitutionary devise in favor of 'some old ladies' home' has come into operation."

In Pfeffer v. Finn, 239 Iowa 24, 28, 30 N.W.2d 481, 483, the court said: "Generally speaking, a testator may devise property subject to such conditions as he may determine, if not in violation of law."

The appellee has cited Collins v. Collins, 116 Iowa 703, 88 N.W. 1097, Tarbell v. Smith, supra, 125 Iowa 388, Blain v. Dean, 160 Iowa 708, 142 N.W. 418, Moore v. Dick, 208 Iowa 693, 225 N.W. 845, Caslavka v. Caslavka, 194 Iowa 52, 188 N.W. 4, and Shoberg v. Rock, 230 Iowa 807, 298 N.W. 838, in support of his contention that his death without heirs would have to happen in the lifetime of the testator in order for the devise to pass to other devisees named in the will. The cases do so state, and as said in Tarbell v. Smith, 125 Iowa 388, at 389, 101 N.W. 118, 119: "*This rule of construction* is adopted in order to avoid repugnancy, and because the law favors the vesting of estates at the earliest possible period *in the absence of a clear manifestation of the intention of the testator to the contrary.*" (Italics ours.) In Shoberg v. Rock, 230 Iowa 807, 810, 298 N.W. 838, 839, we said: "A devise over on the contingency of the first taker's death refers to death in the testator's lifetime unless a contrary intention is found in other provisions of the instrument or circumstances surrounding the execution of the will." That is the most that any of these cases hold. The rule contended for is not a rule of law but merely a rule of construction, based upon a weak, technical and arbitrary reason. Speaking of the rule, it is said in 57 Am. Jur., Wills, section 1242: "This presumption readily yields where the intention of the testator appears to be otherwise, and instances where it has been held to have been overcome by the context of particular wills are frequent." See also Scofield v. Hadden, 206 Iowa 597, 603–605, 220 N.W. 1, and Wheeler v. Long, 128 Iowa 643, 645, 646, in which it was said that a limitation on an absolute estate might entirely defeat it, and that: "It is the intention of the testator, and not the rule of construction which governs." In Fulton v. Fulton, 179 Iowa 948, 949, 162 N.W. 253, L. R. A. 1918E 1080, as stated in syllabus 2, "the partiality of the law for *vested*

remainders must, manifestly, yield to the clearly expressed testamentary intent of the testator." As stated in In re Estate of Pottorff, supra, 216 Iowa 1370, 1373, to wit:

"Thus, in the case at bar, taking the will as a whole, this court must ascertain the testator's intent. Rules of construction of wills are only useful when they are an aid to the court in ascertaining the intent of the testator. No arbitrary or technical rules of construction should prevail where the wording of the will itself expresses the testator's intent, and, even though the [testator's] language may be awkward and unaided by punctuation, the testator has the legal right to make any distribution of his property he may elect, not contrary to law or public policy, and in doing so the testator may provide under what conditions certain devises and gifts will pass and become effective."

The intention that there was to be a devise over to others on the death of the son without lineal heirs could have no other meaning than that the ultimate takers could not be determined until the death of the son, because until his death such heirs were possible. The only way in which the defeasible fee which the son held to this land could be absolutely vested in him was that lineal descendants of himself be in existence at his death whenever it should occur, whether before or after the death of the testator. If he intended that the devise over should become operative and effective only in case the son predeceased him, he could and would have said so. But the will does not so state. The true rule is stated in Guilford v. Gardner, supra, 180 Iowa 1210, at page 1221, as hereinbefore set out, to wit: *"The reference to the son's death without issue is accompanied by no words limiting its meaning to death in the lifetime of the testator, nor by other words by which such limitation can be fairly implied, and without such words or fair implication of such meaning, the devise must be given effect accordingly."* (Italics ours.) There are no such words and no fair implication of such meaning, and we must hold with the trial court that neither the will itself nor the surrounding circumstances establish that the testator intended when he used the words "Should my son die without heirs (lineal descendants)" that his son's death must occur in the testator's lifetime, to enable the lands in controversy to pass to others in his bloodline instead of to his son.

. In 1929, when the will was made, the testator was eighty-one years old and the son was forty-six years old. In 1935, when the codicil was made, the testator·was eighty-seven years old and the son was fifty-two years old. The son was thirty-five years younger than his father on both of these occasions. The chances of the son outliving the father were ·greatly in favor of this event. It is apparent that the testator was very desirous of keeping this land, which his father had entered upon in 1858, in the McCulloch bloodline. The testator had later acquired it and held it for years. He knew that it probably would pass out of the family if his son acquired it. Knowing this, he never-would have risked the right and the chance of keeping it in the family on the long-shot gamble that he would outlive his son. There is no merit to this contention of the appellee in this Division.

VI. The objectors insist that the son paid the Iowa State Inheritance tax ten or more years ago on the basis of his having but a life estate in the tracts of land involved herein, and that the inheritance tax upon the remainder interest in said lands was computed, but payment was deferred until the contingency upon which the remainders exist would be determined. This is con-·ceded. Objectors argue that in so doing the son placed a not unreasonable construction on an unambiguous will, which is contrary to the construction he now contends for, and that his own practical construction as an interested party is entitled to weight in the construction of the will and codicil. They cite Guilford v. Gardner, supra, 180 Iowa 1210, where the parties entered into an agreement respecting their rights under the will. They also cite 67 A. L. R. 1272, annotation, and also 94 A. L. R. 26, annotation.

In view of our decision of the appeal on other grounds noted in the opinion, and because the facts relative to the tax matter in the record are limited, it is not necessary to and we do not pass upon this issue.

The decree of the district court is reversed and the cause is remanded to said court with directions to render and enter a decree in conformity with this opinion.—Reversed and remanded with directions.

All JUSTICES concur.